CHRISTOPHER NEWTON *vs.* COMMISSIONER OF THE
DEPARTMENT OF YOUTH SERVICES & others[1]
(and a companion case[2]).

Nos. 03-P-374 & 03-P-0375.

Suffolk. June 10, 2004. - October 27, 2004.

Present: LAURENCE, PORADA, & TRAINOR, JJ.

*Contract,* Collective bargaining contract. *Labor,* Collective bargaining, Failure
to pay wages, Overtime compensation, Public employment, Wages. *Words,*
"Mechanics, laborers, or workmen," "Penal and charitable institution."

This court concluded that G. L. c. 149, § 148, the prompt payment of wages
statute, creates an independent statutory right that can be enforced judicially
even when a collective bargaining agreement addresses the same subject
matter, and therefore, the plaintiffs in two civil actions were not required
to pursue administrative remedies before commencing their actions in
court to recover overtime, call-back, and stand-by wages [344-347];
nevertheless, this court could not determine from the record in this case
whether the statute applied to either of the plaintiffs, employees of a camp
operated by the Department of Youth Services, because the record lacked
any description of the plaintiffs' duties which would allow a determination
whether they came within the statute's classification of a "mechanic,
laborer or workman" for the Commonwealth [347-348], even if the
plaintiffs did not fall into the alternate category under the statute of being
employed in a penal or charitable institution [348-349].
In a civil action, the judge properly dismissed the claims of the plaintiffs,
employees of the Department of Youth Services, for their superiors' interfer-
ence with their right to claim overtime compensation under G. L. c. 151,
§ 1A, in violation of G. L. c. 151, § 19, where G. L. c. 151, § 1A, does
not apply to Commonwealth employees such as the plaintiffs. [350-351]

CIVIL ACTIONS commenced in the Superior Court Department
on February 15 and February 19, 2002.

---

[1]Director of Human Resources of the Department of Youth Services and
Department of Youth Services.

[2]Robert Long *vs.* Commissioner of the Department of Youth Services,
Director of Human Resources of the Department of Youth Services, and the
Department of Youth Services.

Motions to dismiss were heard by *Ernest B. Murphy*, J.

*Paul Holtzman* for Christopher Newton & another.

*Matthew Q. Berge* for Commissioner of the Department of Youth Services & others.

PORADA, J. The plaintiffs, Robert Long and Christopher Newton, respectively the facility director and assistant facility director of a youth forestry camp operated by the Department of Youth Services (DYS), brought suit against their employer, DYS, in the Superior Court to recover overtime, call-back, and stand-by pay they claim due to them. For purposes of these appeals, the relevant portions of their complaints include the claims for the failure to pay overtime compensation in violation of G. L. c. 149, § 30B, and G. L. c. 149, § 148 (count four)[3]; for the failure to pay call-back and stand-by pay in violation of G. L. c. 149, § 148 (count five); and for their superiors' interference with their right to claim overtime compensation under G. L. c. 151, § 1A, in violation of G. L. c. 151, § 19 (count six).

The defendants filed motions to dismiss the complaints pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974). A Superior Court judge allowed the motions on the grounds that the plaintiffs were required to exhaust their claims for compensation under the grievance and arbitration procedure provided by their collective bargaining agreement and the court was without jurisdiction to hear their claims for a violation of G. L. c. 151, § 19, because it was a matter to be initially determined by the Massachusetts Labor Commission. On appeal, the plaintiffs press only their claims for violations of G. L. c. 149, § 148, and G. L. c. 151, § 19. We reverse the dismissal of the claims based on a violation of G. L. c. 149, § 148, but affirm the dismissal of the counts based on a violation of G. L. c. 151, § 19.[4]

1. *Violation of G. L. c. 149, § 148.* The plaintiffs argue that

---

[3]Although count four refers to G. L. c. 149, § 30B, it appears that the plaintiffs are no longer pursuing any claims for overtime compensation pursuant to G. L. c. 149, § 30B, but are confining their claims for overtime compensation to G. L. c. 149, § 148.

[4]After the plaintiffs filed their notices of appeal, the defendants advised the plaintiffs that they would not, on appeal, be pursuing the argument that "employees who are subject to a Collective Bargaining Agreement are not

the motion judge erred in dismissing their claims based on a violation of the prompt payment of wages law,[5] because their right to overtime, call-back, and stand-by pay is based on a personal, nonwaivable statutory right that they are free to enforce judicially notwithstanding that their entitlement to this compensation is addressed in a collective bargaining agreement. See *Rooney* v. *Yarmouth*, 410 Mass. 485, 492 (1991) (acknowledging that there are certain "personal, substantive, nonwaivable statutory guarantee[s]" that an employee need not submit to arbitration). See also *Barrentine* v. *Arkansas-Best Freight Sys.*, 450 U.S. 728, 739-746 (1981) (right to minimum pay and overtime pay under the Fair Labor Standards Act is a personal, nonwaivable statutory guaranty that an employee can enforce judicially even though those subjects are covered by a collective bargaining agreement). The purpose of G. L. c. 149, § 148, is to prevent the evil of the "unreasonable detention of wages [by employers]." *Boston Police Patrolmen's Assoc., Inc.,* v. *Boston*, 435 Mass. 718, 720 (2002). As such, it bestows upon individual workers the right to recover not only their lost wages, but also treble damages, reasonable attorney's fees, and costs. G. L. c. 149, § 150. While an individual may waive the requirements of the statute by a writing, the record does not disclose that the plaintiffs did so. Nor does their collective bargaining agreement include any reference to G. L. c. 149, § 148, or to the time when wages must be paid.

Nevertheless, the plaintiffs' collective bargaining agreement

entitled to pursue remedies under G. L. c. 149, § 148." Because the parameters of the "stipulation" are unclear and because the thrust of the plaintiffs' argument rests on the premise that G. L. c. 149, § 148, creates an independent judicial remedy, our discussion focuses on whether a cause of action under c. 149, § 148, sufficient to survive a rule 12(b)(6) motion, has been stated.

[5]General Laws c. 149, § 148, as amended through St. 1992, c. 133, § 503, in pertinent part provides as follows: "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week, . . . and the commonwealth, its departments, officers, boards and commissions shall so pay every mechanic, workman and laborer employed by it or them, and every person employed in any other capacity by it or them in any penal or charitable institution . . . ."

provides for overtime, call-back, and stand-by pay and allows them to file a grievance or seek alternate dispute resolution relating to the interpretation and application of the terms of the agreement. It is well-recognized that where a collective bargaining agreement exists and the subject matter of the dispute is encompassed therein, public policy favors the resolution of the dispute between an employee and employer within the framework of the grievance and arbitration procedures. See *Local No. 1710, Intl. Assoc. of Fire Fighters, AFL-CIO* v. *Chicopee*, 430 Mass. 417, 421-422 (1999). See also *Azzi* v. *Western Elec. Co.*, 19 Mass. App. Ct. 406, 410 (1985) ("To permit employees to circumvent existing grievance and arbitration procedures, by bringing actions against their employers in the first instance, does not strike us as a commendable practice"). Nonetheless, it is also well-established that there are certain personal, statutory rights that can be enforced judicially even though they are incorporated into a collective bargaining agreement. *Rooney* v. *Yarmouth*, 410 Mass at 492. See *DaLuz* v. *Department of Correction*, 434 Mass. 40, 46-47 (2001). The mere fact that those rights may be created both by contract and by statute and may be violated by the same factual occurrence does not vitiate their distinct and separate nature. See *O'Brien* v. *Agawam*, 350 F.3d 279, 284-285 (1st Cir. 2003) (police officers were not required to exhaust the grievance and arbitration procedures in their collective bargaining agreement before bringing an action in the district court to collect overtime compensation under the Fair Labor Standards Act).

In this case, we agree with the plaintiffs that the right to timely payment of wages is a distinct, independent statutory right that can be enforced judicially even though the subject matter of overtime, call-back, and stand-by pay is incorporated in the plaintiffs' collective agreement. Cf. *Livadas* v. *Bradshaw*, 512 U.S. 107, 123-125 (1994) (employee's rights under a California statute requiring timely payment of wages are independent from rights under collective bargaining agreement). The statutory right to the timely payment of wages does not involve the collective rights of employees but, rather, is designed to insure that each individual is paid promptly the wages due him or her. Cf. *School Comm. of Brockton* v. *Mas-*

*sachusetts Commn. Against Discrimination*, 377 Mass. 392, 399 (1979) (right to equal employment opportunities under G. L. c. 151B, § 4, is an independent statutory right that cannot be bargained away by a union or employer); *Blanchette* v. *School Comm. of Westwood*, 427 Mass. 176, 180-181 (1998) (employee not barred from pursuing an action for retaliation pursuant to G. L. c. 151B, § 4(4), even though she had proceeded to arbitration on the same facts pursuant to a collective bargaining agreement).

The personal nature of this right is underscored by the provision of redress not only in the form of recovery of lost wages, but also treble the amount of the loss, reasonable attorney's fees, and costs. See *Barrentine* v. *Arkansas-Best Freight Sys.*, 450 U.S. at 743-745 (in determining that the right to a minimum wage and overtime pay under the Fair Labor Standards Act may be enforced judicially notwithstanding those subjects were encompassed in a collective bargaining agreement, the Supreme Court relied in part on the limited authority and power of an arbitrator to enforce the parties' agreement rather than to afford the relief available to an individual under the act). Further, the mere fact that the collective bargaining agreement must be consulted for the rate of pay does not preclude a plaintiff from pursuing his or her claims in court. *Lividas* v. *Bradshaw*, 512 U.S. at 124-125. All that is required is calculating the amounts of compensation due according to the wage rate in the collective bargaining agreement at the time payment was due. Because this right is an independent, statutory one, which was not waived, the plaintiffs were not required to pursue administrative remedies before commencing their actions in court to recover overtime and the other wages claimed.

Having concluded that the prompt payment of wages statute creates an independent statutory right that can be enforced judicially even when a collective bargaining agreement addresses the subject matter of compensation, we turn to the issue whether the statute applies to the plaintiffs' claims in this case. The time limits set for the payment of wages under § 148 apply only to Commonwealth employees who are a "mechanic, workman [or] laborer" or are employed in any other capacity "in a penal or charitable institution." See note 5, *supra*. The

words "mechanic, workman and laborer" and "penal or charitable institution" are not defined in G. L. c. 149.[6] In construing the words "mechanic, workman and laborer," we turn to the common meaning attributed to these words in other legislation pertaining to the rights of workers in this Commonwealth.

As used in the early versions of our workers' compensation statutes, "[a] 'laborer' ordinarily is a person without particular training who is employed at manual labor . . . while 'workmen' and 'mechanics' broadly embrace those who are skilled users of tools." *Devney's Case*, 223 Mass. 270, 272 (1916). Under this definition, a supervisory janitor whose work was not of "menial" character, *White's Case*, 226 Mass. 517, 521 (1917); a teacher in an industrial school, *Lesuer's Case*, 227 Mass. 44 (1917); and a call fireman, *Randall's Case*, 279 Mass. 85 (1932), were not considered to be workmen, laborers, or mechanics. But see *Tracy* v. *Cambridge Jr. College*, 364 Mass. 367, 375-376 (1973) (assistant librarian at a junior college considered a "mechanic, laborer or workman" under G. L. c. 152, § 1 (4)(*a*), as then in effect). Whether an individual comes within the classification of a "mechanic, laborer or workman" is dependent on the nature of the work performed by him or her. *Id.* at 372. Here, other than the descriptive titles of the plaintiffs, we know nothing about the nature of their duties. Consequently, we are unable to determine on this undeveloped record whether the prompt payment of wages law applies to the plaintiffs as mechanics, laborers, or workmen.

We must also consider whether § 148 affords the plaintiffs relief because it pertains to all Commonwealth employees who are employed in a "penal or charitable institution." See note 5, *supra*. Those terms are not defined in G. L. c. 149. However, G. L. c. 125, § 1, as inserted by St. 1972, c. 777, § 8, does define the term "penal institution" as follows: "[a]s used in [G. L. c. 125] and elsewhere in the general laws, unless the context otherwise requires . . . a 'penal institution' [means a]

---

[6]The defendant raises for the first time on appeal that the plaintiffs are not covered under the specific terms of G. L. c. 148, § 148. Both parties have briefed this issue. We consider the issue based on the principle that we may consider on appeal any issue that supports the result in the trial court even though it was not argued below. *Gabbidon* v. *King*, 414 Mass. 685, 686 (1993).

'correctional facility.' " General Laws c. 125, § 1(*n*), as amended by St. 1992, c. 286, § 191, defines a "state correctional facility" to mean "any correctional facility owned, operated, administered or subject to the control of the department of correction . . . ." Here, there is no dispute that the plaintiffs' employer is DYS. DYS is a State department under the direction and control of the Commissioner of Youth Services who is appointed by the Secretary of Health and Human Services. G. L. c. 18A, § 1. Its purpose is to "provide a comprehensive and coordinated program of delinquency prevention and services to delinquent children and youth referred or committed to the department by the courts; community services for the prevention of juvenile delinquency . . . ; and services and facilities for the study, diagnosis, care, treatment, including physical and mental health and social services, education, training and rehabilitation of all children and youth referred or committed" to it. G. L. c. 18A, § 2, as inserted by St. 1969, c. 838, § 1. It is prohibited from transferring children in its custody to a "penal institution." Specifically, the forestry camp at which the plaintiffs worked was designed to provide education and training as may be deemed best for the readjustment of youths involuntarily committed to the department's care. G. L. c. 120, § 11.

Given the purposes for which the DYS was created, the plain meaning attached to the words "penal [and] charitable institution,"[7] and the narrow construction that has been afforded G. L. c. 149, § 148, *Prozinski* v. *Northeast Real Estate Servs. LLC*, 59 Mass. App. Ct. 599, 605 (2003), we conclude that the DYS is not a "penal or charitable institution" under G. L. c. 149, § 148. Nevertheless, as noted, because we are unable to determine if either plaintiff qualifies as a "mechanic, laborer or workman" on the record before us, their claims based on the failure to make timely payment of wages should not have been dismissed pursuant to rule 12(b)(6).[8]

---

[7]We cannot envision any interpretation of the term "charitable institution" that would bring the DYS within its purview.

[8]Neither party has raised the issue whether overtime, call back, and stand-by pay are considered "wages" under G. L. c. 149, § 148; therefore, that issue has not been addressed by us.

2. *Violation of G. L. c. 151, § 19.* The plaintiffs argue that the judge should not have dismissed their claim alleging that they had been subject to discrimination, threats, and retaliation by their supervisors as a result of pressing their claims for overtime compensation due them under G. L. c. 151, § 1A. Although the judge dismissed this claim on the ground that it was one of an unfair labor practice that initially came within the jurisdiction of the Labor Relations Commission, we are of the opinion that the claim should have been dismissed as matter of law on other grounds.

Section 19(1), as amended by St. 1973, c. 1192, § 16, prohibits an employer from "discriminat[ing] against any employee . . . because such employee has complained of a violation of the provisions of [G. L. c. 151], . . . or because such employer believes that said employee or individual may complain of a violation of [G. L. c. 151]" and allows an employee for this violation to sue for "not . . . less than one month's wages nor more than two month's wages of such individual, and the costs of the suit, including a reasonable attorney's fee." The violation claimed by the plaintiffs is the failure to pay overtime as required by G. L. c. 151, § 1A. However, that statute does not apply to Commonwealth employees. The obligation to pay overtime compensation for Commonwealth employees is, instead, set forth in G. L. c. 149, § 30B.

General Laws c. 151, § 19(5), as amended by St. 1998, c. 236, § 19, also provides, in pertinent part, whoever "threatens, coerces, or intimidates any employee who has wages due under this chapter, for the purpose of causing such person to accept as payment in full a lesser sum than the full amount of the wages so due, shall have violated this section and shall be punished or shall be subject to a civil citation or order as provided in section 27C of chapter 149, and each employee so solicited or threatened shall constitute a separate offense." General Laws c. 149, § 27C, does not provide a private cause of action, but rather permits the Attorney General to seek redress for a violation of this specific section.[9] Further, the wages to which the statute refers are the minimum wages and overtime compensation provided

---

[9]General Laws c. 149, § 27C(*b*)(1), as amended by St. 1999, c. 127, § 142, provides as follows: "As an alternative to initiating criminal proceedings

by G. L. c. 151 which are not at issue in this action. Consequently, this claim was appropriately dismissed.

The portions of each judgment that dismiss the fourth and fifth causes of action (counts four and five) are reversed. The judgments of dismissal on the remaining causes of action are affirmed.

*So ordered.*

---

pursuant to subsection (a), the attorney general may issue a written warning or a civil citation. For each violation, a separate citation may be issued requiring any or all of the following: that the infraction be rectified, that restitution be made to the aggrieved party, or that a civil penalty of not more than $25,000 for each violation be paid to the commonwealth, within 21 days of the date of issuance of such citation."