Williams, P.J.
Claiming he did not receive certain compensation promised by the Fire Chief of the defendant, Town of Randolph (“Randolph”), for attending paramedic training, plaintiff Christopher Walsh (‘Walsh”), a firefighter, brought this action for non-payment of wages and breach of an oral contract. The trial court allowed Randolph’s Mass. R. Civ. P, Rule 12(b)(6), motion to dismiss the suit for failure to state an actionable claim. This Dist/Mun. Cts. R. A. D. A., Rule 8A, expedited appeal by Walsh followed. We affirm.
Walsh claimed that before Randolph hired him as a firefighter, he had orally contracted with Fire Chief Richard W. Wells (Wells”) to receive payment for attending emergency medical technician (“EMT”) training he attended after he became a Randolph firefighter. According to Walsh, Wells told him he would have to take specific EMT training in order to be hired. Walsh offered to take advanced EMT training, but Wells advised him to take the intermediate EMT training and assured Walsh that he would be paid for doing so once he was hired. Walsh completed that training at his own expense, and Randolph eventually hired him. Walsh signed a written employment contract, in the form of a letter from Wells, on November 15, 2000. The contract specified that Walsh’s hiring was contingent *86 upon his completing both recruit training and the first available paramedic course. He was also required to maintain paramedic certification. The contract was silent as to payment for Walsh’s paramedic training. Walsh started working on November 26, 2000 and joined the firefighters’ union shortly thereafter. Conditions of employment for firefighters at that time were set out in a collective bargaining agreement between Randolph and the union.
Walsh attended paramedic training in compliance with his contract, and Randolph paid him for the hours he attended that training during his regularly scheduled work hours. He was not, however, paid for some 410 hours of attendance on his own time. Walsh claims those hours as lost wages, and his complaint against Randolph in this action sought treble damages, costs and attorney’s fees for violation of the Wage Act, G.L.c. 149, §150. He also alleged breach of contract and detrimental reliance. Randolph responded with a motion to dismiss pursuant to Rule 12(b) (6) or, alternatively, for summary judgment.
In allowing Randolph’s motion to dismiss, the judge ruled that once Walsh joined the union, he surrendered his right to contract individually with Wells as to “subjects where the employer is obligated by law to bargain collectively with the employee’s union.” The judge specifically found that the collective bargaining agreement between the union and Randolph became a substituted contract, and that Walsh’s membership in the union extinguished any prior agreement he had with Wells about compensation.
Walsh’s appeal presents two issues: the substantive propriety of the judge’s dismissal, and the procedural propriety of deciding the case by way of a motion to dismiss.
1. We review the motion judge’s decision to determine whether Randolph satisfied its burden of showing that no provable set of facts would entitle Walsh to relief. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 (2004); Midland States Life Ins. Co. v. Cardillo, 59 Mass. App. Ct. 531, 536 (2003). A motion to dismiss tests the sufficiency of the complaint. Reznik v. Friswell, 2003 Mass. App. Div. 89, 91. Its allowance is appropriate only when the complaint, read indulgently in favor of the plaintiff, Schaer v. Brandeis Univ., 432 Mass. 474, 476 (2000), does not state a set of facts that, even if proven, would constitute a cause of action. Natick Auto Sales, Inc. v. Department of Procurement and Gen. Servs., 47 Mass. App. Ct. 625, 630 (1999). Stated alternatively, the court will accept as true the factual allegations of the complaint and all inferences favorable to the plaintiff which can be reasonably drawn from them. Lopes v. Commonwealth, 442 Mass. 170, 172 n.3 (2004). The court will not, however, accept as true legal conclusions (such as the interpretation of a contract) pleaded in the form of factual allegations. Berkowitz v. President & Fellows of Harvard College, 58 Mass. App. Ct. 262, 270 (2003). A Rule 12(b) (6) motion should be allowed only if it appears “to a certainty” that the plaintiff is entitled to no relief under any cast of the facts that could be proven in support of the claim. Wozniak & Padula, P.C. v. Gilmore, Rees, Carlson & Cataldo, P.C., 2005 Mass. App. Div. 49, 50, citing Nader v. Citron, 272 Mass. 96, 98 (1977). The issue is not a matter of discretion for the court, but instead requires the motion judge to determine as a matter of law that the plaintiff can prove no facts supporting relief. Martinez v. Harvey, 1992 Mass. App. Div. 79, 80. Further, a complaint will withstand a motion to dismiss if it appears that the plaintiff might be entitled to any form of relief even if the specific relief demanded, or the theory of recovery asserted, might not be appropriate. New England Insulation Co. v. General Dynamics Corp., 26 Mass. App. Ct. 28, 30 (1988). The judge in this case ruled as a matter of law that Walsh could not recover against Randolph on his alleged oral contract with Wells because that contract was superceded by Walsh’s union’s collection bargaining agreement. There was no error.
When employees join a union, they surrender their ability to bargain individu *87 ally with their employer as to matters either governed by a collective bargaining agreement, or as to which the employer is legally obligated to bargain collectively with the union. Horner v. Boston Edison Co., 45 Mass. App. Ct. 139, 144 (1998). Generally, employees represented by a collective bargaining unit cannot negotiate directly with their employer regarding the terms and conditions of their employment. Service Employees Int’l Union, AFL-CIO, Local 509 v. Labor Relations Comm’n, 431 Mass. 710, 714-715 (2000).
Direct dealing is impermissible for at least two related reasons. First, direct dealing violates the union’s statutory right to speak exclusively for the employees who have elected it to serve as their sole representative. This right necessarily includes the power to control the flow of communication between the employer and the represented employees concerning subjects as to which the union is empowered to negotiate.[2] Second, direct dealing undermines employees’ belief that the union actually possesses the power of exclusive representation to which the statute [G.L.c. 150E] entitles it.
Id. at 715.
It is clear that an employee of a private employer may contract directly with the employer as to matters outside the scope of those two parameters; that is, matters governed by a collective bargaining agreement and matters concerning which the employer is obligated by law to bargain collectively with the union. See Horner, supra, at 144. It is less clear whether an employee of a public employer may do so. Although several Massachusetts decisions concern issues of public employees covered by collective bargaining agreements, not one specifically holds that public employees have the right to engage in direct dealings with public employers about matters outside the two parameters. Permitting such independent arrangements in the public sector seems risky; the statutory requirements governing public employment signify that such “side” arrangements are ill-favored.
Public employers, including towns such as Randolph, are obligated by statute to negotiate with an “exclusive representative,” such as the union here, “with respect to wages, hours, standards of productivity and performance, and any other terms and conditions of employment. ...” G.L.c. 150E, §6. See generally City of Lynn v. Labor Relations Comm’n, 43 Mass. App. Ct. 172 (1997); Town of Randolph, 8 M.L.C. 2044, 2052 (duty to refrain from direct dealing is corollary to employer’s duty to bargain with exclusive representation). ‘To define the limits of direct dealing is therefore to do no less than to define the meaning of the exclusive representation concept, a basic building block of labor law policy under G.L.c. 150E.” Service Employees Int’l, supra, at 715. More to the point, public employers such as Randolph are constrained in ways inapplicable to private employers; they are mandated by statute to “submit to the appropriate legislative body within thirty days after the date on which the agreement is executed by the parties, a request for an appropriation necessary to fund the cost items contained therein....” G.L.c. 150E, §7 (b). See, e.g., Local 1652, Int’l Ass’n of Fire Fighters v. Town of Framingham, 442 Mass. 463 (2004). The legislative body for Randolph is the town meeting. “If [that body] duly rejects the request for an appropriation necessary to fund the cost items, such cost items shall be returned to the parties for further bargaining.” G.L.c. 150E, §7 (b). Simply put, the legislative and budgeting processes applicable to public employers seem to leave scant procedural room for separate pre-hire deals such as Walsh would enforce here. There is no evidence that the promise *88 Wells made to Walsh was ever part of the reasoned procedure the Legislature has mandated. Suffering such “side” arrangements would circumvent this exclusive process, and would jeopardize the safeguarding of the public fisc it affords.
Even assuming Walsh, as a public employee, could have sought to enforce Wells’s oral promise by establishing that the subject of that promise was not encompassed in the union’s collective bargaining agreement with Randolph, the dismissal of his claims was not erroneous. Walsh argues that his oral agreement with Wells is not prohibited because it did relate to a matter falling outside the collective bargaining agreement; namely, payment for attending EMT training. But Article XVII, Section 3 of the collective bargaining agreement[3] comprehensively addresses EMT training and compensation for completing it. It provides that:
[ajny new firefighter, who is appointed and is not an E.M.T. shall be required to attend and successfully complete an available Basic E.M.T. Course at his/her own expense within one year of his/her appointment. If any part of the course occurs while the firefighter is scheduled to be on duty, the Fire Chief shall grant the firefighter the necessary time off with pay to attend the course.
Section 2 of Article XVII provides for additional compensation of $2,400.00 for firefighters who are registered or certified EMTs, for a stipend of $650.00 to firefighters who have completed intermediate EMT training, and for a stipend of $900.00 to firefighters who have obtained paramedic training.[4]
Although Walsh asserts that his particular agreement with Wells is not covered by those provisions, the provisions sufficiently address the issue of compensation for EMT training. To expect such provisions to include every conceivable permutation of the EMT-compensation question is unrealistic. The trial judge did not err in finding that the collective bargaining agreement became the substituted contract, and thus that Walsh had not stated a cause of action for which relief may be granted.
Walsh’s citation of J.I. Case Co. v. National Labor Relations Bd., 321 U.S. 332 (1944) and Newton v. Commissioner of Dept. of Youth Serv., 62 Mass. App. Ct. 343 (2004) does not change the result we reach. Relying on J.I. Case, which involved a private employer, Walsh argues that contracted-for individual benefits which augment, rather than diminish, a collective bargaining agreement might be enforceable. But the/./. Case Court made plain the underpinning of collective bargaining agreements.
The practice and philosophy of collective bargaining looks with suspicion on such individual advantages ... advantages to individuals may prove as disruptive of industrial peace as disadvantages. They are a fruitful way of interfering with organization and choice of representatives; increased compensation, if individually deserved, is often earned at the cost of breaking down some other standard thought to be for the welfare of the group, and always creates the suspicion of being paid at the long-range expense of the group as a whole.
*89 J.I. Case, supra, at 338-339. Not only, then, is the oral agreement Walsh would seek to enforce superceded by the collective bargaining agreement, but allowing its enforcement would offend the public policy favoring collective bargaining that the Unites States Supreme Court has long recognized.
Walsh cites Newton for the proposition that certain statutorily-created individual rights, such as the prompt payment of wages, might be enforceable even though they are included in the collective bargaining agreement. See also Kessler v. Cambridge Health Alliance, 62 Mass. App. Ct. 589, 596 n.5 (2004). In Newton, the plaintiffs claimed that the Department of Youth Services owed them overtime, call-back and stand-by pay. The motion judge dismissed their claims on the ground that the plaintiffs were required to exhaust their claims under the grievance and arbitration procedure provided by their collective bargaining agreement. The Newton Court held that the right to timely payment of wages was a distinct, independent right created by the Wage Act that may be enforced judicially even though the subject matter of compensation is addressed by the collective bargaining agreement. Newton, supra, at 346-347. Newton makes the point that “[t]he statutory right to the timely payment of wages does not involve the collective rights of employees but, rather, is designed to insure that each individual is paid promptly the wages due him or her.” Id. at 346. Walsh does not seek in this case, however, to enforce judicially the payment of wages due him; rather, he seeks judicial recognition of the very existence of a particular kind of additional compensation not specifically provided for in the collective bargaining agreement. And, unlike the situation in Newton, determining the existence of that “right” to the particular kind of EMT-training pay Walsh seeks here would indeed involve the collective rights of employees. The record does not indicate that the compensation Walsh claims was also available to other union members covered by at least the 1999 to 2004 versions of the collective bargaining agreement.
2. The procedural issue on this appeal is whether the motion judge, who referred to documents outside the pleadings, properly treated Randolph’s motion as one to dismiss for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) rather than one for summary judgment under Mass. R. Civ. R, Rule 56. When intending to convert a motion to dismiss to one for summary judgment, a judge must, unless the parties otherwise consent, see Calnan v. Planning Bd. of Lynn, 63 Mass. App. Ct. 384, 388 (2005), provide the opposing party with notice of that intent and an opportunity to file additional, presumably countervailing, material. Mass. R. Civ. R, Rule 12(b)(6). See also White v. Peabody Constr. Co., 386 Mass. 121, 126-128 (1982); Ellis and Ellis v. Demers, 2004 Mass. App. Div. 7, 8. A failure to provide such notice and opportunity is not reversible error, however, if the opposing party has not demonstrated prejudice. White, supra, at 126-128. No prejudice has been shown by Walsh in this case. The absence of prejudice is understandable given that the only “additional” document considered by the motion judge was the collective bargaining agreement, about which there is no dispute. The November 15, 2002 contract was actually appended to Walsh’s complaint.
Further, a court’s reliance on uncontested documents does not invariably compel the conversion of a motion to dismiss to one for summary judgment. A document such as the contract in this case is not outside the complaint when the complaint specifically refers to the document and no party questions the document’s authenticity. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). See also Mass. R. Civ. R, Rule 10(c) (“A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes”). Indeed, even when a document is not attached to a complaint, if a plaintiff had notice of the document and relied on it in framing the complaint, the attachment of such a docu *90 ment to a motion to dismiss does not convert the motion to one for summary judgment. Marram v. Kobrick Offshore Fund, Ltd, supra, at 45 n.4 and cases cited. Although Walsh might not have “relied” on the collective bargaining agreement in drafting his complaint in this case, he has neither disputed his membership in the union that negotiated that agreement, nor challenged the agreement’s authenticity. The motion judge did not err, therefore, in failing to convert Randolph’s dismissal motion to a summary judgment motion.
The dismissal of the complaint is affirmed.
So ordered.

 There is a narrow exception for the grievance process. Service Employees Int’l, supra at 715 n.5, citing G.L.c. 150E, §3.

 The language of this article of the collective bargaining agreement is identical for the version (1999-2001) in effect when Walsh was hired in 2000, and the subsequent version (2002-2004).

 These provisions were those effective in 1998; the compensation amounts have been increased for later fiscal years.