Kenton-Walker, JANET, J.
Plaintiffs, who are or have been adult newspaper carriers for the Worcester Telegram & Gazette Corporation (“the Telegram”), bring this action against the Telegram, alleging the Telegram has misclassified them as independent contractors and thereby deprived them of certain rights under state law.[2] Plaintiffs’ complaint alleges the following: violations of the Massachusetts Independent Contractor Law, G.L.c. 149, §148B (Count I); violations of the Massachusetts Wage Act, G.L.c. 149, §148 (Count II); breach of contract and the implied covenant of good faith and fair dealing (Count III); unjust enrichment (Count IV); quantum meruit (Count V); G.L.c. 93A, §§2 and 11 (Count VI); fraud, deceit and misrepresentation (Count VII); rescission of the “Home Delivery Service Agreements” they entered into with the Telegram and invalidation of arbitration provisions (Count VIII); conversion (Count IX); declaratory relief (Count X); injunctive relief (Count XI); and a request for an accounting (Count XII). Pursuant to Mass.R.Civ.P. 12(b)(6), the Telegram now moves to dismiss Counts II, III, V, VI, VII, and IX of the complaint, as well as all claims asserted by plaintiff Thomas Driscoll (“Driscoll”). After hearing, and for the reasons set forth below, the Telegram’s motion is ALLOWED in part and DENIED in part.
BACKGROUND
Plaintiffs’ complaint alleges the following facts.[3] Plaintiffs are individuals who deliver or have in the past delivered newspapers for the Telegram. The Telegram fired Driscoll in 2003 and, after Driscoll’s application for unemployment benefits was denied, the Appeals Court determined in Driscoll v. Worcester Telegram & Gazette, 72 Mass.App.Ct. 709, 714 (2008), that the Telegram had misclassified him as an independent contractor, rather than as an employee, for purposes of unemployment benefits.
The Telegram is in the business of publishing, distributing, and delivering news publications to customers throughout Worcester County and adjoining counties. At all times relevant to this case, the *265 Telegram’s circulation operations in Central Massachusetts were administered through a Circulation Department consisting of a Circulation Director, Assistant Director, Field Operations Manager, several Area Managers, twenty to thirty district managers, and approximately 400 adult newspaper carriers. This latter group of individuals was tasked with delivering several daily morning newspapers, as well as other periodicals and products, along one or more assigned home deliveiy routes.
As a condition of employment, each adult carrier was required to sign a “Home Delivery Service Agreement” (the “Agreement”) for each numbered delivery route he or she agreed to deliver. The Agreement authorized the Telegram to control many of the details of the carriers’ job performance. It required each carrier to arrive at his or her local distribution center by a fixed time, usually 4 a.m., to retrieve the bundle drops of newspapers for each of his or her routes. The carriers were required to complete their routes before 6:30 a.m. on weekdays, and before 7:30 a.m. on Sundays.
The Telegram used a system of “redress charges,” whereby it deducted amounts from the carriers’ weekly checks for what it determined to be any unsatisfactory delivery or customer complaint. The Telegram Circulation Department had exclusive authority in determining redress charges and deductions. In the event a carrier became ill, or unable for any reason to deliver a route, the Telegram required the carrier to engage a substitute, subject to approval by the Circulation Department, and to pay the substitute from the carrier’s own funds.
The Telegram paid and continues to pay the adult carriers as “Independent Contractors,” and deducts no taxes from the carriers’ checks, and provides no benefits and workers’ compensation or unemployment insurance. The carriers are responsible for providing their own vehicles, fuel, and other expenses necessary to perform each route. They must purchase plastic bags and rubber bands from the Telegram or another source, and are required to wrap certain publications on a daily basis. The Telegram deducts the costs of these supplies from their checks when it provides them to carriers.
DISCUSSION
To survive a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), a complaint must set forth the basis of the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Id., quoting Bell Atl Corp., 550 U.S. at 555. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief. . .” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
I. The Wage Act, G.L.c. 149, §148
Plaintiffs broadly allege that, under the Wage Act, they are or were entitled to wages, benefits and/or repayment/reimbursement of all costs and expenses they were improperly forced to bear. The Telegram argues this claim must be dismissed because Plaintiffs do not allege the Telegram failed to pay them earned wages; rather, according to the Telegram, Plaintiffs allege conduct that is simply not prohibited by the Wage Act.
The purpose of the Wage Act is to prevent employers from unreasonably detaining wages rightfully earned by employees. Wiedman v. Bradford Group, Inc., 444 Mass. 698, 703 (2005); Newton v. Commissioner of Dep’t of Youth Servs., 62 Mass.App.Ct. 343, 345 (2002). In order to make a claim under the Wage Act, a plaintiff must allege he earned wages and his employer failed to pay him those earned wages. See G.L.c. 149, §148. Although there are some areas that cannot be circumvented by contract, such as whether or not an individual is an employee or independent contractor, a contract entered into by an employer and employee may determine what constitutes earned wages. The Wage Act does not require employers to offer employees paid vacation time, nor does it prohibit an employer and employee from entering into an agreement in which the employee agrees to pay for certain job-related expenses or to sustain penalties for poor job performance. Although Plaintiffs’ complaint includes allegations not covered by the Wage Act, their claim that the Telegram improperly used “redress charges” and deducted amounts from Plaintiffs’ weekly checks for what it determined to be unsatisfactory performance, could fall within the ambit of the Wage Act. While the use of “redress charges” is not necessarily violative of the Wage Act, improper use of such charges so as to deprive carriers of otherwise rightfully earned wages, could violate the Wage Act. Such being the case, dismissal of this claim is not warranted.
II. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing
Plaintiffs’ claim for breach of contract and the implied covenant of good faith and fair dealing asserts, “(t]he Telegram has breached its promise to comply with all appropriate laws implied in its written contracts with Plaintiffs including its implied promise to deal in good faith and fairly with Plaintiffs.” This allegation is sufficient to survive a motion to dismiss.[4] Every contract includes an implied covenant of good faith and fair dealing, which provides “that neither parly shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . .” Anthony’s Pier *266 Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991), quoting Drucker v. Roland Wm. Jutras Assocs., 370 Mass. 383, 385 (1976). Plaintiffs’ allegation that the Telegram has deprived them of certain benefits by misclassifying them as independent contractors is sufficient to sustain a claim for breach of contract and the implied covenant of good faith and fair dealing.
III. Quantum Meruit
The Telegram argues that Plaintiffs’ quantum me-ruit claim should be dismissed because quantum meruit is a type of remedy, not an independent cause of action. This court disagrees. Quantum meruit “is a claim independent of an assertion for damages under [a] contract, although both claims have as a common basis the contract itself.” J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793 (1986). It is commonly pled in complaints as a separate count and dismissal is not required.
VI. G.L.c. 93A
The Telegram also asserts that Plaintiffs’ G.L.c. 93A claim must fail because, as alleged, it arises in the context of an employment relationship, a realm in which G.L.c. 93A does not apply. This court agrees. The remedies provided for in Chapter 93A are unavailable to employees in disputes with their employers arising from the employment relationship. Manning v. Zuckerman, 388 Mass. 8, 12-14 (1983); Informix, Inc. v. Rennell, 41 Mass.App.Ct. 161, 163 (1996). In light of the extensive regulation of the employment relationship and protections to employees offered by other statutes, c. 93A does not apply in the context of the employment relationship. Id. at 12. As the present case involves just such a dispute, a claim brought pursuant to c. 93A cannot survive and dismissal of Count VI is warranted.
V. Fraud, Deceit and Misrepresentation
The Telegram also contends Plaintiffs’ fraud claim must be dismissed because the circumstances of the alleged fraud have not been stated with sufficient particularity. Rule 9(b) of the Massachusetts Rules of Civil Procedure requires a plaintiff to plead “the circumstances constituting fraud . .. with particularity.” The purpose of this rule is to ensure a defendant knows “the particular statements which constituted the alleged fraud so that [it can] prepare [its] defense.” Friedman v. Jablonski, 371 Mass. 482, 488-89 (1976).
Plaintiffs allege, "By making execution of the ‘Home Delivery Service Agreements’ a condition precedent to employment of Plaintiffs and Class Members and otherwise making representations concerning the parties’ rights and duties, the Telegram intentionally, recklessly, negligently or innocently misrepresented Plaintiffs’ and Class Members’ status, depriving them of the wages and benefits to which they were entitled as employees, and the Telegram avoided paying the necessary taxes and costs incident to hiring employees, including but not limited to paying for contributions to the unemployment insurance fund, obtaining workers’ compensation insurance coverage, paying Social Security taxes as an employer and deducting taxes on behalf of the carriers.”
This broad statement is insufficient to satisfy the particularity requirement for allegations of fraud and the Telegram’s motion to dismiss this count shall be allowed, with leave for Plaintiffs to amend their complaint to include a fraud count that more specifically alleges the time, place, and content of the alleged false representation. See Frederick v. ConAgra, 713 F.Sup. 41, 46 (D.Mass. 1989) (specificity as to time, place, and content of alleged false representation sufficient to satisfy particularity requirement).
TV. Conversion
Plaintiffs’ conversion claim alleges that by “misclas-sifying its adult carriers as independent contractors, the Telegram required Plaintiffs and Class Members to bear costs incident to the Telegram’s business operations, converting property of Plaintiffs and Class Members to its own use and profit. . .” This allegation is insufficient to state a claim for conversion. To establish conversion, a plaintiff must prove a right to immediate possession of personal property, over which the defendant has exercised dominion inconsistent with the plaintiffs rights. Grand Pacific Finance Corp. v. Brauer, 57 Mass.App.Ct. 407, 412 (2003). Here, Plaintiffs fail to sufficiently allege they had a right to immediate possession of personal property. Even assuming the Telegram did misclassify its adult carriers as independent contractors, this does not lead to the conclusion that the Telegram could not require them, as employees, to bear certain costs incident to performing their jobs. Nothing prohibited the Telegram from including such a requirement in its contracts with adult newspaper carriers. Such being the case, Plaintiffs have not made an adequate allegation that the Telegram converted any property to which they had a right of possession and the Telegram’s motion to dismiss this claim shall be allowed.
VII. Claims Brought by Thomas Driscoll
The Telegram further argues that all claims brought by plaintiff, Thomas Driscoll are barred by the applicable statutes of limitations. The Telegram asserts that the limitations period should begin to run when Driscoll filed his unemployment claim in July 2003, which was almost five and a half years before the pending action was filed on January 8, 2009. Driscoll, meanwhile, asserts that until the Appeals Court in 2008 decided the legal nature of his employment relationship with the Telegram, he was not aware of his employment status. Driscoll invokes the discovery rule, arguing that a question of fact exists regarding when he knew or should have known of the existence of a cause of action. He essentially contends that the more than five-year period required to adjudicate his employment status was “a necessary predicate” to bringing the present action.
*267 The discovery rule applies when a cause of action is not capable of being discovered because it is based on an “inherently unknowable” wrong. International Mobiles Corp. v. Corron & Black/Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215, 222 (1990). “Under [the] discovery rule, the statute of limitations starts when the plaintiff discovers, or reasonably should have discovered, ‘that [he] has been harmed or may have been harmed by the defendant’s conduct.’ ” Koe v. Mercer, 450 Mass. 97, 101 (2007), quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-06 (1990). In general, the question of “whether a plaintiff in a particular position knew or should have known of the defendant’s wrongful conduct is for the fact finder.” Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 377 (2008).
The court is not convinced by Driscoll’s argument that he should benefit from the 2008 date when the Appeals Court issued its decision on his employment status as it related to his claim for unemployment insurance. The court is also not persuaded by the Telegram’s argument, however, that Driscoll knew or should have known of the Telegram’s allegedly wrongful conduct at the time he filed his unemployment claim. Driscoll may veiy well have had reason to know of his claims before the Appeals Court rendered its decision; for example, when the Division of Unemployment Assistance originally denied his unemployment claim because it concluded there was no “employer-employee relationship” between Driscoll and the Telegram. At this motion to dismiss stage, however, the court does not have sufficient information to make the statute of limitations issue so clear cut as to take it out of the hands of a jury. See Id. (reversing partial allowance of summary judgment on grounds that factual issue related to statute of limitations and discovery rule was “not so clear cut as to remove it from the fact finder’s consideration”). Such being the case, the Telegram’s motion to dismiss Driscoll’s claims on statute of limitations grounds must be denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant Worcester Telegram & Gazette's motion to dismiss be:
1. DENIED as to Count II (Wage Act);
2. DENIED as to Count III (Breach of Contract and Implied Covenant of Good Faith and Fair Dealing);
3. DENIED as to Count V (Quantum Meruit);
4. ALLOWED as to Count VI (G.L.c. 93A, §§2 and ID;
5. ALLOWED as to Count VII (Fraud, Deceit and Misrepresentation) without prejudice and with leave to amend; and
6. ALLOWED as to Count IX (Conversion).
It is furthered ORDERED that the defendant Worcester Telegram’s motion to dismiss all remaining claims by plaintiff Thomas Driscoll is DENIED.

Plaintiffs purport to bring suit as a class. As the class has yet to be certified, the court analyzes their claims as being brought by individual plaintiffs.

Nile court also considers the information provided in Driscoll v. Worcester Telegram & Gazette, 72 Mass.App.Ct. 709, 714 (2008), a copy of which Plaintiffs attached to their complaint.

Plaintiffs’ memorandum in support of its opposition to the Telegram’s motion to dismiss discusses allegations that the Telegram breached its contract with Driscoll when it fired him in 2003. Because this allegation is not contained in the complaint itself, the court does not consider it in determining whether the claim for breach of contract and the implied covenant of good faith and fair dealing states a viable claim.