NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-930

LORI CONVEY[1]

<u>vs</u>.

COMMONWEALTH OF MASSACHUSETTS & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case arises from a dispute over whether compensation is owed pursuant to a collective bargaining agreement (CBA). The plaintiffs, who are adult education teachers employed by the Department of Correction (DOC), were represented by their union in labor negotiations with the defendants. Those negotiations resulted in a CBA (2016 CBA) that governed the plaintiffs' employment as educators, in part by setting forth an annual schedule of work and vacation. Under the 2016 CBA, the plaintiffs worked a forty-week school year and enjoyed a summer

_____

[1] Individually and on behalf of all others similarly situated.

[2] Commissioner of Department of Correction.

break from approximately mid-June through Labor Day.[3]  In August 2016 however, prior to the expiration of the 2016 CBA or the start of the 2016-2017 school year, the union executed a memorandum of understanding (MOU) with the defendants that altered the schedule for the upcoming 2016-2017 school year so that DOC could transition to a full-year academic program.  The parties subsequently agreed to a new CBA that incorporated the changes contemplated in the MOU (2017 CBA).  Among the changes from the 2016 CBA, the 2017 CBA eliminated four weeks of vacation time from the summer of 2017.

In light of the changes, the named plaintiff filed a complaint in the Superior Court under the Wage Act, G. L. c. 149, §§ 148, 150, on behalf of herself and others similarly situated, arguing that they had been denied earned wages that were due to them on a prorated basis from July 1 to September 6, 2017.[4]  The parties subsequently filed cross motions for summary judgment, and, after a hearing, a judge of the Superior Court

_____

[3] The 2016 CBA also required that "[a]side from the summer break, academic teachers are required to take the period between Christmas Day and New Year's Day off."

[4] Prior to filing the complaint in Superior Court, the named plaintiff attached her signature to a grievance report alleging that the defendants had implemented a transitional school year that overlapped with "earned time off with pay" and sought nine weeks of owed salary or to be credited with nine weeks of compensatory leave.  During arbitration proceedings, many of the teachers who worked during the transitional year accepted a settlement, but the named plaintiff did not.

2

denied the plaintiffs' motion for summary judgment and granted judgment for the defendants. The plaintiffs appealed. We vacate the judgment of the Superior Court.

Discussion. "Summary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law."[5] HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 326 (2022). "Our review of a decision on a motion for summary judgment is de novo." Id., quoting Berry v. Commerce Ins. Co., 488 Mass. 633, 636 (2021).

"Originally enacted in 1879, the purpose of the Wage Act is 'to protect employees and their right to wages.'" Mui v. Massachusetts Port Auth., 478 Mass. 710, 711 (2018), quoting Electronic Data Sys. Corp. v. Attorney Gen., 454 Mass. 63, 70 (2009). According to the Wage Act, "[e]very person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him. . . . The word 'wages' shall include any holiday or vacation payments due an employee under an oral or written agreement." G. L. c. 149, § 148, first par.

As we explained in Parris v. Sheriff of Suffolk County, 93 Mass. App. Ct. 864, 867 (2018):

> "The purpose of G. L. c. 149, § 148, is to prevent the evil
> of the unreasonable detention of wages by employers. We
> have consistently held that the legislative purpose behind
> the Wage Act is to provide strong statutory protection for

---

[5] We agree with the plaintiffs that "[t]he facts of this case are not in dispute."

employees and their right to wages.  Accordingly, waiver of Wage Act protections is strongly disfavored.  (Quotations, citations, alteration, and punctuation omitted.)

"The fundamental public policy against forfeiture of Wage Act protections is rooted in the 'special contract' provision of the statute, . . . which states, 'No person shall by a special contract with an employee or by any other means exempt himself from this section or from [G. L. c. 149, § 150].'  G. L. c. 149, § 148."

Under G. L. c. 150E, unions are the "exclusive representative of all the employees . . . for the purpose of collective bargaining and are empowered to act on the employees' behalf with respect to wages, hours, standards or productivity and performance, and any other terms and conditions of employment" (quotations and citations omitted).  Parris, 93 Mass. App. Ct. at 868.  "[T]he unions possess the right to speak exclusively for all the employees on mandatory subjects of collective bargaining."  Id.  However, "[t]he statutory right to the timely payment of wages does not involve the collective rights of employees but, rather, is designed to insure that each individual is paid promptly the wages due him or her."  Newton v. Commissioner of Dep't of Youth Servs., 62 Mass. App. Ct. 343, 346 (2004).  "Although a union has the power to waive statutory rights related to collective activity, rights . . . which are of a personal, and not merely economic, nature are beyond the union's ability to bargain away."  Parris, supra at 869, quoting

4

Blanchette v. School Comm. of Westwood, 427 Mass. 176, 183 (1998).

Here, the defendants' obligations to the plaintiffs are set forth in the various agreements to which both are party. The 2016 CBA set forth an annual schedule in which the school year would begin after Labor Day, include forty weeks of work, and conclude at some point in June. A summer break then followed for approximately nine weeks before the annual academic cycle would repeat. We conclude that the 2016 CBA, therefore, represented an agreement between the parties that the 2016-2017 school year would begin on September 6, 2016, and continue until June 30, 2017, at which point a nine-week summer break would commence before school would resume on September 5, 2017. We further conclude that, at the time the plaintiffs completed the work required of them under that agreement, the nine weeks of vacation promised under the 2016 CBA became protected under the Wage Act as "wages earned by [them]."[6] G. L. c. 149, § 148, first par. See generally Electric Data Sys. Corp., 454 Mass. at 67-71 (discussing Wage Act protection of promised vacation time).

---

[6] The defendants argue that "[v]acation time can form the basis of a claim under the Wage Act only if it is due under an agreement," but, here, we conclude that the claimed vacation time was due to the plaintiffs under the 2016 CBA.

5

The question that remains is whether, as the defendants contend, the union effectively bargained away the plaintiffs' 2017 summer vacation by agreeing to the MOU and subsequent 2017 CBA. The defendants argue that, because the union agreed to the MOU and 2017 CBA, the agreements governing the plaintiffs' employment during the period in question did not include the claimed vacation time. We conclude, however, that, to the extent these agreements abrogated the plaintiffs' right to their earned wages in the form of the nine weeks of vacation in question, they are "special contracts" proscribed by the Wage Act and are therefore unenforceable. Parris, 93 Mass. App. Ct. at 869. As we have explained, the Wage Act expressly prohibits special contracts abrogating its protections with respect to individual rights. G. L. c. 148, § 148, sixth par. See Parris, supra at 867. Earned wages are one such right protected by this clause, and the plaintiffs' union was not empowered to bargain away the plaintiffs' right to the vacation time they earned by completing the work due from them during the 2016-2017 school year. Id. at 869. To do so constituted the disposal of individual rights under the Wage Act, which our precedent prohibits. Id.; Newton, 62 Mass. App. Ct. at 347.

We are unpersuaded by the defendants' argument that the cases on which we have relied to reach this conclusion are inapposite because they deal with the right to earned wages, as

6

opposed to vacation time, because vacation time due under a contract counts as wages per the express language of the statute.  G. L. c. 149, § 148, first par.  As we explained supra, the vacation time at issue here was due under the terms of the 2016 CBA.  Accordingly, the judgment of the Superior Court is vacated.  The case is remanded for a determination of damages owed to the plaintiffs under the Wage Act.[7]

So ordered.

By the Court (Rubin,
  Massing & Desmond, JJ.[8]),

Assistant Clerk

Entered:  May 14, 2024.

---

[7] The defendants also argue that the plaintiffs are collaterally estopped from arguing that they are owed nine weeks of vacation under the 2016 CBA because an arbitrator already determined that issue in a final judgment to which the plaintiffs' union was a party.  However, the payment of earned wages is an individual right that can be enforced judicially, notwithstanding grievance procedures set forth in a CBA.  See Parris, 93 Mass. App. Ct. at 869; Newton, 62 Mass. App. Ct. at 346.  Nor do we agree with the defendants that the union's acceptance of a settlement agreement bound the named plaintiff and all other class members to the terms of that agreement.  It is undisputed that the named plaintiff did not sign the settlement agreement.  We decline to enforce the settlement agreement against the named plaintiff or any other member of the class who did not sign on.  See Parris, supra.

[8] The panelists are listed in order of seniority.