Leibensperger, Edward P., J.
Timothy Pacheco (“Pacheco”) filed this four-count lawsuit against the defendants H.N. Gorin, Inc., d/b/a H.N. Gorin Associates, Inc. (“Gorin Associates”), Kristian Gibson (“Gibson”), and Rosalind E. Gorin (“Rosalind”) (collectively “defendants”) seeking recovery of wages not paid to him as they became due. Count I (the “Wage Act claim”) of the complaint alleges violations of the Weekly Wage Law, G.L.c. 149, §§148 and 150 (“Wage Act”). Counts II and IV of the complaint allege defamation and invasion of privacy, respectively.[2] Count III (the “Fiduciary Duty claim”) of the complaint alleges defendants breached a fiduciary duty owed to Pacheco.
Before this Court are Pacheco’s Motion for Summary Judgment with respect to the Wage Act claim (Count I), and defendants’ Motion for Summary Judgment as to the Wage Act claim and the Fiduciary Duly claims (Counts I and III). After reviewing the parties’ submissions and the relevant law, Pacheco’s Motion for Summary Judgment is ALLOWED, and defendants’ Motion for Summary Judgment is DENIED with respect to the Wage Act claim and ALLOWED with respect to the Fiduciary Duty claim.
BACKGROUND
On October 27, 2004, Pacheco commenced employment as a senior mechanic with Gorin Associates. While employed with Gorin Associates, Pacheco’s salary varied. Pacheco initially earned $800 per week but his earnings subsequently increased to $824 per week.
Approximately six to eight months after he began working for Gorin Associates, Pacheco was offered the opportunity to participate in a retirement program. He received an enrollment form to create a retirement account. The enrollment form is, apparently, missing.[3] A copy has not been supplied by any of the parties. Nevertheless, the parties agree that “[f]rom December 16, 2005 to November 23, 2007, Gorin [Associates] deducted $82.40 from each of Pacheco’s paychecks in connection with Gorin’s SARSEP retirement program.” Consolidated Joint Statement of Material Facts (“SOF”) par. 47. Gorin Associates argues that the SARSEP retirement program was intended to qualify as a Salary Reduction Simplified Employee Pension (“SARSEP”) under the Internal Revenue Code, 26 U.S.C. §408(k)(6).
Pacheco’s wife, Kimberly Pacheco (“Kimberly”), filled out the enrollment form and selected the funds that Pacheco’s payroll deductions were to be invested in at Fidelity Investments.[4] Pacheco returned the enrollment form to Kimberly Paikos (“Paikos”), an employee of Gorin Associates. Between December 16, 2005 and November 23,2007, atotal of $8,604.80 was deducted from Pacheco’s weekly paychecks.
Paikos is a Property Manager for Gorin Associates. She is also responsible for hiring new employees. As part of her hiring duties, Paikos is responsible for distributing and collecting the paperwork associated with establishing a new employee’s retirement account. Paikos mentioned Gorin Associates’ retirement plan to Pacheco during their first meeting. Upon collecting an employee’s enrollment form, Paikos would give Gibson the enrollment form. Gibson was Gorin Associates’ Asset Manager. As Asset Manager, Gibson had signatory authority over Gorin Associates’ payroll account and was in charge of Gorin Associates’ employee retirement accounts.
In late 2005, Pacheco asked Paikos about the status of his retirement account. Paikos responded that she did not know the status and that Pacheco should address the matter with Gibson. Gibson told Pacheco that he was “working on it.” Joint Appendix of Exhibits for Summary Judgment (“Joint Appendix of Exhibits”) *312 Ex. E, 54:11. Approximately every six months thereafter, Pacheco asked Paikos about the status of his retirement account. On these occasions, Paikos informed Pacheco that she did not have any information regarding the retirement account. Paikos further told Pacheco she would discuss the matter with Gibson and then contact Pacheco. When Paikos discussed Pacheco’s putative retirement account with Gibson, Gibson responded that he had to “get that taken care of or I have to do that." Joint Appendix of Exhibits Ex. C, 28:23-24.
On October 27, 2006, Kimberly wrote an email to Paikos inquiring why Pacheco had not received a statement from Fidelity Investments regarding the retirement account. Paikos responded by acknowledging that Pacheco had in fact inquired about the status of his retirement account and that she would bring the matter to Gibson’s attention. Paikos advised Gibson of Kimberly’s email and concern. Gibson responded that he had not done anything about the retirement account. In late 2006 or early 2007, Kimberly contacted Fidelity Investments seeking information about Pacheco’s retirement account. Fidelity Investments informed Kimberly that it had no record of a retirement account being created in Pacheco’s name by Gorin Associates.
On July 3, 2007, Pacheco was injured in a work-related accident. Gorin Associates continued to pay Pacheco’s salary from July 3, 2007, until the first week of January 2008, even though Pacheco was unable to work. Between July 3, 2007 and January 2008, Gorin Associates paid Pacheco approximately $20,600. Joint Appendix of Exhibits Ex. Q, par. 6. In January 2008, Pacheco began receiving Workers Compensation benefits, which lasted until October 2008. In October 2008, Pacheco and the workers compensation insurance carrier for Gorin Associates reached a settlement agreement. Pacheco continued to receive health, dental, and disability insurance through Gorin Associates until February 2009, which cost Gorin Associates approximately $30,000. Joint Appendix of Exhibits Ex. Q, par. 6.
On October 15, 2007, Pacheco wrote an email to Rosalind, the president of Gorin Associates. Pacheco’s email stated in part: “I know my wife has left numerous voice messages with Kris [Gibson] reguarding [sic] check stubs which I haven’t received in months nor anything reguarding [sic] my 401k.” Joint Appendix of Exhibits Ex. I. Rosalind did not respond to Pacheco’s email. On November 30, 2007, Kimberly sent Rosalind an email regarding Pacheco’s retirement account. The email in relevant part states:
We have not been provided with written documentation that HN Gorin created an account for Tim at Fidelity for his 401k. Tim has been having money withheld from his paycheck for contributions to his 401k for two years. Tim has contacted Fidelity and [has] been told there is no record of an account being created. If in fact the account was not created, Tim has not received returns on approximately $10,000 he has invested and will need to be made whole for his contributions and the lost [sic] of returns he should have earned.
Joint Appendix of Exhibits Ex. J, par. 3. On December 3, 2007, Gibson responded to Kimberly’s email stating that (1) he handled the situation incorrectly; (2) he had a check for Pacheco; and (3) they should meet in person to discuss the situation.[5]
On December 6, 2007, Kimberly, accompanied by her brother, met with Gibson. During this meeting, Gibson informed Kimberly that he never established a retirement account for Pacheco. Gibson also stated that Pacheco’s payroll deductions had not been invested in a retirement account on Pacheco’s behalf. Gibson offered Kimberly a check for $8,075.20. Kimberly, however, refused to accept the check because (1) the check did not cover the entire amount of money withheld from Pacheco’s salary, and (2) of concerns regarding the tax implications of accepting the check since she and Pacheco had claimed retirement account deductions on their tax returns. Gibson also informed Kimberly that he was unable to locate Pacheco’s retirement account enrollment form but that he would continue to look for it and contact her when it was located. Gibson never contacted Kimberly.
Pacheco retained an attorney. On March 23, 2009, Pacheco obtained a right to sue letter from the Office of the Attorney General. Joint Appendix of Exhibits Ex. K. On March 26, 2009, Gorin Associates tendered Pacheco a check for $8,604.80, which carried the legend “SARSEP FINAL DISTRIBUTION.” Joint Appendix of Exhibits Ex. L. The check was accompanied by a letter which in relevant part states:
[e]nclosed please find check #003195, in the amount of Eight thousand six hundred four dollars and eighty cents, representing Mr. Pacheco’s 40IK payroll deductions and the one and only open item to resolve with [Gorin Associates] . . . which by issuing this check, for the second time, we have now completely fulfilled.
Joint Appendix of Exhibits Ex. M. On March 31, 2009, Pacheco’s attorney responded to Gorin Associates’ letter, stating:
[i]f it is your intent to pay the undisputed amount of $8,604.80, without prejudice, then Mr. Pacheco can and will accept this check as such. If I do not hear from you on or before April 7 that the check is submitted to us without prejudice to Mr. Pacheco’s rights, then we will return the check, since we cannot accept it as payment in full of his claims against [Gorin Associates].
Joint Appendix of Exhibits Ex. N. Gorin Associates failed to respond by April 7, and Pacheco returned the check. This action was commenced on April 17, 2009. During a court hearing later in April 2009, Gorin *313 Associates tendered and Pacheco accepted a check for $8,604.80, without prejudice as to any of Pacheco’s claims against Gorin Associates.
DISCUSSION
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. An adverse party cannot defeat a motion for summary judgment merely by resting on its pleadings and assertions of disputed facts, rather it must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
Wage Act Claim
Pacheco and defendants seek to have Pacheco’s Wage Act claim adjudicated via summary judgment. Pacheco contends that the deductions from his weekly paycheck, which Gorin Associates was supposed to place in a retirement account but did not, were not paid to him within six days of the termination of each pay period. Thus, Gorin Associates violated the Wage Act. Defendants contend that the deductions from Pacheco’s weekly paycheck were not wages and, therefore, the Wage Act does not apply. Defendants necessarily base this argument upon the parties’ intent to create a retirement account for Pacheco into which the payroll deductions were to be deposited. It is undisputed, however, that no retirement account for Pacheco was ever established and that, instead, the payroll deductions were held by Gorin Associates until 2009.
A. Weekly Deductions from Pacheco’s Paycheck
In pertinent part, G.L.c. 149, §148 provides;
Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . . but in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee ... The word “wages” shall include any holiday or vacation payments due an employee under an oral or written agreement.
It is undisputed that Pacheco was an “employee” under the Act and that the amounts deducted from Pacheco’s paychecks would be wages, as described by the Act, subject only to the following contention of defendants. Defendants argue that the amounts were not wages because the parties intended to deposit the amounts into a retirement account and, if the amounts had been deposited into a §408(k)(6) account, the amounts would not have been wages under the Internal Revenue Code. Defendants’ argument is flawed in two respects.
First, the argument is hypothetical. The facts are that that the retirement account for Pacheco was never created and the amounts deducted from Pacheco’s paychecks were held by Gorin Associates and not paid to Pacheco. It defies logic to rely upon what was supposed to occur, but did not, as a basis for exoneration from the strict requirements of the Wage Act. The fact that no retirement account was ever created also distinguishes this case from the case relied upon by defendants, Boston Police Patrolmen’s Ass’n Inc. v. City of Boston, 435 Mass. 718 (2002). In Boston Patrolmen’s the retirement accounts were established and the claim asserted was that there was a delay of more than six days in depositing the amounts representing an employee's agreed-upon reduction in pay. Here, there simply was no retirement account. That being so, the amounts withheld from Pacheco’s paychecks were wages.
Second, even if a retirement account for Pacheco had been created under 26 U.S.C. §408(k), the amounts to be deposited into that account would have been wages under the Wage Act. The putative §408(k) retirement plan of Gorin Associates is substantively different than the deferred compensation plan in Boston Patrolmen’s.
In Boston Patrolmen's, the City of Boston offered its employees a deferred compensation plan pursuant to G.L.c. 29, §64B. Id. at 720. The police officers who participated in the plan agreed to reduce their pay and designated the reduction to be invested in a tax-deferred fund. Id. at 719. Each pay period, the City of Boston transferred the appropriate amount, noted on the employee’s paycheck, to the plan coordinator. Boston Police Patrolmen’s Ass’n, Inc. v. City of Boston, 1999 WL 1260164, at *3 (Mass.Super. Garsh, J.) [11 Mass. L. Rptr. 11). The police officers sued Boston alleging that the amounts were not deposited into the *314 tax-deferred fund within six days of the end of each pay period, thus violating the Wage Act. Boston Patrolmen’s, 435 Mass. at 719.
General Laws c. 29, §64B allows the Commonwealth and its subdivisions to offer its employees a deferred compensation program “in accordance with the U.S. Internal Revenue Code.” The Internal Revenue Code, in turn, provides that to obtain tax-deferral benefits under a municipal deferred compensation program, the contributions “shall remain (until made available to the participant or other beneficiary) solely the property and rights of the employer . . . subject only to the claims of the employer’s general creditors.” 26 U.S.C. §457(b)(6).[6] Focusing on the language of the Internal Revenue Code, the Supreme Judicial Court held that the “deferred compensation contributions [were] not ‘wages’ under the weekly wage law” because if the SJC were to hold otherwise and construe “deferred compensation contributions as ‘wages,’ which would be the employees’ property, then the employees could lose the Federal tax benefit for which the deferred compensation statute was created.” Boston Patrolmen’s, 435 Mass. at 722.
In deciding that the pay reductions were not wages under the Wage Act, the Supreme Judicial Court focused on determining the owners of the contributions, i.e, whether the contributions were the employee’s or the employer’s properly. Under a Salary Reduction Simplified Employee Pension plan, as defendants allege would have been set up here for Pacheco, the contributions deducted from Pacheco’s weekly paycheck would vest immediately upon being transferred into his account. See, Salary Reduction Simplified Employee Pension for Small Business, I.R.S. Pub. No. 4336, at 6 (2004) (“Contributions are always immediately 100-percent vested—that is, contributions and all earnings cannot be forfeited”). The account is not the property of the employer. Instead, withdrawals from the account by the employee must not be prohibited, 26 U.S.C. §408 (k)(4)(B), and the account is a trust for the exclusive benefit of the employee or his beneficiaries. 26 U.S.C §408(a).[7] Moreover, unlike Boston Patrolmen’s, there is no Massachusetts statute specifically authorizing the deferral of payment of wages so as to qualify for tax benefits under the Internal Revenue Code. See Dobin v. CIOView Corporation, 2003 WL 22454602 at *6 (Superior Court, Oct. 29, 2003) (Gants, J.) [16 Mass. L. Rptr. 785].
Because this Court holds that the deductions from Pacheco’s pay constitute wages under the Wage Act, this Court finds that the defendants violated the Wage Act by failing to pay Pacheco his wages within six days of the termination of the pay period during which those wages were earned. The Court must now decide whether Pacheco is entitled to treble damages, costs of litigation and reasonable attorney fees. See, G.L.c. 149, §150.
B. Treble Damages
On July 12, 2008, Chapter 80 of the Acts of 2008 took effect amending portions of G.L.c. 149, §150. Prior to this amendment, treble damages for violations of the Wage Act were discretionary. See Wiedmann v. Bradford Group Inc., 444 Mass. 698, 709 (2005) (“[T]here is nothing in the plain language of the statute that requires an award of treble damages”).[8] As a result of the 2008 amendment, G.L.c. 149, §150 now provides for mandatory treble damages when a plaintiff establishes a violation of the Wage Act. G.L.c. 149, §150.[9] Plaintiff here argues for the application retroactively of the 2008 amendment. Defendants argue the opposite.[10] It is unnecessary to resolve that question because this Court finds that Pacheco is entitled to treble damages under the standards existing before the 2008 amendment.
Pursuant to G.L.C. 149, §150 prior to amendment, Pacheco is entitled to treble damages if the defendants’ conduct is “outrageous, because of [their] evil motive or [their] reckless indifference to the rights of others.” Wiedmann, 444 Mass. at 711, quoting Goodrow v. Lane Bryant Inc., 432 Mass. 165, 178-79 (2000).
This Court finds that defendants’ conduct was outrageous because of their reckless indifference to promptly setting up a retirement account, paying Pacheco or the account the amounts earned by Pacheco and dealing with Pacheco’s inquiries and complaints about non-payment. Gorin Associates began deducting money from Pacheco’s paychecks on December 13, 2005. Thereafter, as described above, there were multiple inquiries by Pacheco and his wife about the retirement account.[11] Joint Appendix of Exhibits Ex. C, 28:8-30:24; Ex. E, 54:17-21. Despite the repeated inquiries, no retirement account was created and no payment to Pacheco was made. On October 15,2007, Pacheco emailed Rosalind inquiring about his retirement account; Rosalind did not respond to Pacheco’s email. Joint Appendix of Exhibits Ex. I.
Throughout 2006 and 2007, plaintiff obtained no relief. On December 3, 2007, Gibson offered Pacheco’s wife a check for the wrong amount. She did not accept the check. Joint Appendix of Exhibits Ex. F, 30:21-31:5. Gorin Associates next tendered Pacheco a check for $8,604.80, on March 26, 2009; however, the accompanying letter stated that by issuing this check, Gorin Associates considered their obligation “completely fulfilled.” Joint Appendix of Exhibits Ex. M. Pacheco refused to accept this check. Only after filing this lawsuit did defendants finally, in April 2009, tender a check for $8,604.80 without requiring Pacheco to release all claims.
As the above timeline shows, between the time Gorin Associates began deducting Pacheco’s retirement account contributions from his weekly paycheck and the time Pacheco was first offered a check for the money deducted but not placed into a retirement *315 account as requested, Paikos was advised problems existed with Pacheco’s retirement account on at least five occasions; Gibson was advised of problems with Pacheco’s retirement account on at least seven occasions; and the president of Gorin Associates was advised of this problem on at least two occasions. The record indicates that the only reason Pacheco’s retirement account was not established was because Gibson never got around to doing it. Furthermore, Paikos, Gibson, and Rosalind all had significant management experience and responsibilities with Gorin Associates. This Court, therefore, finds that the defendants knowingly and wilfully disregarded Pacheco’s rights by failing to pay him wages within six days after the termination of each pay period. Pacheco is entitled to treble damages, resulting in an amount of $25,814.40.[12] Pacheco has, as indicated, been paid $8,604.80 towards those damages. Pacheco is also entitled to an award of reasonable attorney fees and costs.
Defendants contend that any damages awarded to Pacheco should be reduced by what Gorin Associates says it voluntarily paid to Pacheco for salary after he was injured and for family health, dental, and disability insurance for approximately nineteen months after his injury. These payments allegedly totaled approximately $51,000.[13]*
Plaintiff disputes whether the payments from Gorin Associates were voluntary, arguing instead that the payments were required. In any event, it is undisputed that there was no agreement between Pacheco and defendants that such payments were in mitigation of amounts owed for the deductions taken from Pacheco’s paychecks or in settlement of Pacheco’s Wage Act claim.
The Wage Act is unequivocal in its mandate to pay an employee the wages due within six days of the termination of the pay period. Absent such payment, there is a violation. Gorin Associates’ continuation of Pacheco’s employment in 2007, even if gratuitous, entitled Pacheco to contemporaneous wages in 2007. Payment of those wages is not a defense to the Wage Act claim for the period 2005-2007. Likewise, extending health benefits into 2008 does not exculpate the tardy payments of previous wages. “If the tardy payment were allowed to mitigate damages, the wage earner’s claim would not truly be mooted, since [his] wage payment would still be untimely . . .” Dobin at *7.
Breach of Fiduciary Duty Claim
To establish a breach of fiduciary duty claim, Pacheco must establish (1) the existence of a fiduciary duty based on the relationship of the parties; (2) breach of the fiduciary duty; (3) damages; and (4) a causal connection between the breach of the fiduciary duty and the damages suffered. Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 164 (1999).
According to defendants, Gorin Associates was to hold Pacheco’s weekly salary deductions until the funds were transferred to a retirement account supposedly established with Fidelity Investments. Because defendants were to retain the weekly salary deductions until the funds were transferred, defendants owed Pacheco a fiduciary duty. Warsofsky v. Sherman, 326 Mass. 290, 292 (1950) (“Doubtless, there are many familiar and well recognized forms of fiduciary relationships such as . . . employer and employee. [Citations omitted.] The relationship is not confined, however, to these and similar situations, for the circumstances which may create a fiduciary relationship are so varied that it would be unwise to attempt the formulation of any comprehensive definition that could be uniformly applied in every case.”). By retaining Pacheco’s weekly salary deductions and failing to inform Pacheco that the funds were not being transferred into the retirement account, defendants breached a fiduciary duty owed to Pacheco.
Pacheco, however, will be unable to establish any amount of damages he suffered as a result of defendants’ breach of fiduciary duty. See, Eisenstein v. David G. Conlin, P.C., 444 Mass. 258, 267 (2005) (summary judgment allowed with respect to breach of fiduciary duty claim because of failure to prove damages). Gorin Associates paid Pacheco in 2009 at the outset of this case the full agreed-upon amount owed. Accordingly, Pacheco suffered no damages from the breach of fiduciary duty, and the claim must fail.[14]
ORDER
For the reasons stated above, Timothy Pacheco’s Motion for Summary Judgment is ALLOWED, and Pacheco is entitled to judgment in the amount of $17,209.60 ($25,814.40-$8,604.80), plus reasonable attorney fees and costs. Defendants’ Motion for Summary Judgment is DENIED as it relates to Pacheco’s Wage Act claim and ALLOWED as it relates to Pacheco’s Fiduciary Duty claim.

Pursuant to a stipulation of dismissal, counts II and IV were dismissed as to Gorin Associates.

Pacheco retained a copy of the enrollment form in his office desk. Gorin Associates, however, discarded all of the items in Pacheco’s desk after his employment with Gorin Associates ended. Gorin Associates has not offered a copy of the form.

Neither Kimberly nor Pacheco recalls into which funds they directed Pacheco’s payroll deductions be placed.

In stating that he handled the situation incorrectly, Gibson was “referring to the fact that his [Pacheco’s] 40 IK hadn’t been set up properly and that was my [Gibson’s] mistake.” Joint Appendix of Exhibits Ex. D, 19:19-20.

Title 26, Section 457 of the United States Code is entitled Deferred Compensation Plans of State and Local Governments and Tax-Exempt Organizations, and only governs deferred compensation plans operated by those entities.

The fact that the Internal Revenue Code exempts amounts deposited into a SARSEP account from being treated *316 as taxable wages is not determinative of the question of what is wages under the Massachusetts Wage Act.

Prior to amendment, G.L.c. 149, §150 stated in pertinent part:
Any employee claiming to be aggrieved by a violation of section . . . 148 .. . may .. . institute and prosecute in his own name and on his own behalf ... a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits.

General Laws c. 149, §150 now states in pertinent part:
An employee claiming to be aggrieved by a violation of section . . . 148 .. . may .. . institute and prosecute in his own name and on his own behalf ... a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits. An employee so aggrieved who prevails in such an action shall be awarded treble damages ..."

The issue of whether the 2008 amendment may be applied retroactively is, according to the parties, presently before the Supreme Judicial Court. See, SJC Docket No. 2010-P-0748.

 Based on the six-month timetable, Pacheco discussed his retirement account with Paikos, who in turn discussed the situation with Gibson in or around June 2006, December 2006, and June 2007.

The parties disagree whether the total deducted from Pacheco’s salary was $8,404.80 or $8,604.80; however, because Gorin Associates tendered Pacheco a check for $8,604.80, this Court used that figure in calculating Pacheco’s damages.

Pacheco waived his claim that he is owed four weeks of unused vacation time. See Pacheco’s Opp’n to Defs.’ Mot. for Summ. J., pg. 3.

It appears Pacheco’s breach of fiduciary duty claim was brought in the event his Wage Act claim was dismissed. “In the event, however, that he does not prevail on his Wage Act claims, he should not be foreclosed from demonstrating damages under Count III [Fiduciary Duty claim].” Pacheco’s Opp’n to Defs.’ Mot. for Summ. J., pg. 7.