ELECTRONIC DATA SYSTEMS CORPORATION *vs.* ATTORNEY GENERAL & another.[1]
November 5, 2003. *Attorney General. Contract,* Employment. *Labor,* Wages.
*Employment,* Termination. *Damages,* Employment contract.

The plaintiff, Electronic Data Systems Corporation (EDS), sought judicial
review of the decision of the division of administrative law appeals, which
had upheld the decision of the Attorney General's fair labor and business
practices division (division) citing EDS for violation of the Massachusetts
wage and hour law, G. L. c. 149, § 148. A judge in the Superior Court af-
firmed the decision with respect to the finding of a violation and modified the
amount of the award, whereupon EDS appealed. We transferred the case to
this court on our own motion. For the following reasons, we affirm the
judgment.

1. *Background.* Robert Hutchins was employed at EDS from 1986 until he
was terminated on May 4, 1999. Under EDS's written personnel policy,
Hutchins was eligible for four weeks of vacation time in each calendar year.
The written policy included a chart specifying the amount of ·vacation time al-
lowed for employees, depending on the number of years they had worked at
EDS. Directly below that chart, the policy articulated two limitations on vaca-
tion time, using a question and answer format. First, the policy posited the
following two questions: "What happens if I don't use my vacation during the
year? Can I roll it forward?" The printed answer was, "For salaried employees,
any unused vacation expires on December 31 and may not be carried forward
to the next calendar year." Next, the policy posed two additional questions:
"What if I leave EDS? Can I get paid for any unused vacation?" The answer:
"Vacation time at EDS is not earned and does not accrue. If you leave the
company, you do not receive vacation pay for unused vacation time."

Following his involuntary termination, Hutchins filed a complaint with the
division alleging that EDS had failed to pay him all wages due in that EDS
had not compensated him for the vacation time that remained unused as of the
date of his termination. The division found in favor of Hutchins, ordering
EDS to pay Hutchins the equivalent of four weeks' salary and imposing a
civil penalty of $558. EDS appealed to the division of administrative law ap-
peals, which affirmed the order of payment to Hutchins but vacated the civil
penalty. EDS then sought judicial review. A judge in the Superior Court af-
firmed the agency's decision in part, ruling that Hutchins's unused vacation
time constituted "wages" under G. L. c. 149, § 148, and that EDS's policy
denying such "wages" to departing employees was a violation of the statute.
She did, however, modify the amount of the award, ordering that it be prorated
based on the period of time actually worked by Hutchins since his last an-
niversary date at EDS. The present appeal followed.

2. *Discussion.* The statute, G. L. c. 149, § 148, requires employers to make
payment of "wages" to employees within specific time periods. For purposes
of that section, "[t]he word 'wages' shall include any holiday or vacation pay-
ments due an employee under an oral or written agreement." *Id.* The statute
further provides that "[n]o person shall by a special contract with an employee
or by any other means exempt himself from this section . . . ." *Id.*

The parties have differing interpretations of these statutory provisions. The
Attorney General is of the view (as expressed in a 1999 advisory from the

---

[1]Executive Office for Administration and Finance, Division of Administrative Law
Appeals.

division) that because paid vacation time constitutes "wages," such "wages" must be paid to any departing employee, and that any agreement requiring a departing employee to forfeit earned vacation violates the statute's prohibition against "special contract[s]" exempting the employer from the statute's requirements. EDS is of the view that the statutory definition treating "vacation payments" as "wages" is premised on the terms of the "oral or written agreement" setting out the employee's entitlement to vacation, that nothing in the statute precludes employers from stating the preconditions to eligibility for vacation time or vacation pay, and that the mere setting of such conditions (here, the requirement that the employee remain employed at EDS) does not violate the prohibition against "special contract[s]."

For purposes of the present case, we need not resolve this debate over the correct interpretation of § 148, as we base our decision on the wording of the employment agreement before us. That wording, on which EDS's argument relies, is ambiguous as applied to the circumstances of Hutchins's departure from EDS. Although the policy announces that vacation pay is not owed to any employee who "leave[s]" EDS, it does not specify whether the term "leave" refers to both voluntary and involuntary departures from employment. The question posed in the policy ("What if I leave EDS?") could reasonably be understood to refer only to voluntary departures. It makes no reference to an employee's being "fired" or "terminated," but instead connotes the employee's own decision to "leave," in substance warning the employee that one of the consequences of that decision will be the forfeiture of any vacation time that has not yet been used. That interpretation would arguably be reinforced by the fact that the immediately preceding question and answer concerning an employee's not using all vacation time prior to the end of the year — the familiar "use it or lose it" policy — is also premised on an employee's voluntary choice not to utilize all earned vacation time.

EDS suggests that the term "leave" can refer to any type of separation from the company, voluntary or involuntary — a terminated employee can be referred to as someone who "left" the company, and the neutral term "leave" does not suggest anything about why or under what circumstances the employee "left." That is also a plausible interpretation of the policy, but the wording remains ambiguous. It is undisputed that the personnel policy was drafted by EDS, without input from Hutchins, and any ambiguity in the policy must therefore be interpreted against EDS. See *Merrimack Valley Nat'l Bank v. Baird*, 372 Mass. 721, 724 (1977); *Bowser v. Chalifour*, 334 Mass. 348, 352 (1956), and cases cited. As such, we must interpret the vacation forfeiture provision as applying only to those employees who voluntarily "leave" EDS and thereby voluntarily forfeit any unused vacation time. It does not apply to employees who are involuntarily terminated and given no opportunity to use their vacation time prior to their departure.

Interpreting the parties' agreement in this fashion, Hutchins was "eligible" for vacation time as of the date that he was terminated, and nothing in the agreement would take away his entitlement to that vacation time. Where he was owed vacation time under the employment agreement, payment for that unused vacation time is a form of "wages" that must be paid pursuant to § 148.

Resolving the case on this ground, we express no opinion as to whether this contract provision forfeiting vacation pay in the event of an employee's

voluntary departure, or a contract provision forfeiting vacation pay on involuntary termination, would violate G. L. c. 149, § 148.

*Judgment affirmed.*

*Robert P. Morris* (*Michael Clarkson* with him) for the plaintiff.

*David R. Marks*, Assistant Attorney General (*Marsha Hunter*, Assistant Attorney General, with him) for the defendants.

*Benjamin G. Robbins*, for Associated Industries of Massachusetts & others, amici curiae, submitted a brief.

*Cynthia Mark & Monica Halas*, for Simon So & another, amici curiae, submitted a brief.