Gants, J.
The plaintiffs, John L. Kittredge, Jr. and James L. Kittredge (“the Kittredges”), have brought this action under the Wage Act, G.L.c. 149, §148, seeking recovery for unpaid salary and compensation they contend are due from the defendants Edward McNerney, John Shea, and Kurt Buseck, who are officers of the Kittredges’ former employer, J. Kittredge & Sons, Inc. The defendants have moved to dismiss this action on the grounds that it fails to state a claim under Mass.R.Civ.P. 12(b)(6). After hearing, for the reasons stated below, the motion to dismiss the complaint is ALLOWED.
BACKGROUND
According to the complaint, until March 1999, the Kittredges were owners and employees of J. Kittredge & Sons, Inc. (“the Corporation”). As part of the sale of this business in March 1999 to Kittredge Holdings, Inc., they entered into Employment Agreements with *653 the Corporation on March 19, 1999 in which they agreed to continue to serve as officers. Specifically, John L. Kittredge, Jr. agreed to serve as President of the Corporation until its Board of Directors hired a new Chief Executive Officer, at which time he would serve as Executive Vice-President. James L. Kittredge agreed to serve as Vice-President and Treasurer of the Corporation until the Board of Directors hired a new Chief Executive Officer, at which time he would serve as Vice-President. The duration of both Employment Agreements was two years, “unless extended or sooner terminated in accordance with the provisions” of the Agreement. Employment Agreement at ¶2. Under each Employment Agreement, the Kittredges were to receive an annual salary of $150,000, “payable in accordance with the normal business and payroll practices of the [corporation],” plus benefits. Employment Agreement at ¶4. The Employment Agreements provided that the Corporation could terminate the Kittredges with or without cause during the two-year term of their employment. However, if the Corporation terminated them without cause, “then Employee shall, until the end of the Term, continue to receive all compensation ... at such times that such compensation would otherwise have been payable had this Agreement not been terminated.” Employment Agreement at 15a.
After the sale of the Corporation, the buyer, Kittredge Holdings, Inc., alleged that the Kittredges had breached their fiduciary duty and made false financial representations and warranties in their sale of the Corporation. On September 21, 2000, the Kittredges were terminated from the Corporation. In accordance with the Employment Agreements, the dispute regarding their termination was taken to arbitration. On February 10, 2002, the Arbitrator found that the Kittredges’ termination should be treated as without cause under the Employment Agreements and that they are therefore entitled “to the balance of their salaries for the initial term of the agreement until March 19, 2001 or $75,000 each.” Arbitration Opinion and Award at 5. The Arbitrator’s Opinion and Award (as subsequently amended regarding other matters not relevant to this litigation) was later confirmed and entered as a judgment of the Superior Court. Kittredge Holdings, Inc. and the Corporation, however, refused to pay the Kittredges the $75,000 due to each in accordance with this judgment.
Defendant McNerney served and continues to serve as Chief Executive Officer and President of the Corporation, while defendant Shea serves as its Treasurer. Defendant Buseck served and continues to serve as Chief Executive Officer and President of Kittredge Holdings, Inc.
DISCUSSION
Under the Wage Act, “[e]very person having employees in his service shall pay weekly or biweekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . .” G.L.c. 149, §148. Wages earned by a salaried employee “may be paid weekly, biweekly, or semi-monthly to a salaried employee, but in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee.” Id. In addition, under the Wage Act, “any employee discharged from such employment shall be paid in full on the day of his discharge.” Id.
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of the complaint and all reasonable inferences favorable to the plaintiffs which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The issue is whether the facts alleged, generously construed in favor of the plaintiffs, state a valid legal claim that would warrant relief on any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
There is no dispute that, as a result of the judgment confirming the arbitration award, the Kittredges are each due $75,000 in unpaid salary for the six months remaining on their employment agreements following their termination. The issue before this Court is whether this unpaid $75,000 is salary “earned” by them within the meaning of the Wage Act. If this unpaid salary were indeed “earned,” then the defendants may be personally liable under the Wage Act to pay this earned salary, trebled, because “[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section.” G.L.c. 149, §148 and §150. If it is not “earned,” then the Kittredges may pursue their contract action against the Corporation, but may not proceed individually against the Corporation’s officers or obtain treble damages.
There is no definition of the word “earned” in the Wage Act. Nor is this Court aware of any legislative history that may materially shed light on its meaning. Nor is this Court aware of any controlling judicial precedent that declares the meaning of this word. Consequently, this Court must look elsewhere to determine the Legislature’s understanding of the meaning of the term “earned” as used in the Wage Act.
“[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished.” Commonwealth v. Hinds, 437 Mass. 54, 63 (2002), quoting Commonwealth v. Smith, 431 Mass. 417, 421 *654 (2000), which quotes Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 382 Mass. 580, 585 (1981). The primary purpose of the Wage Act was to limit the interval “between the completion of a work week and the payday on which the wages earned in that week will be paid . . .” American Mutual Liability Ins. Co. v. Commissioner of Labor & Industries, 340 Mass. 144, 145 (1959). In short, the primary purpose was to ensure that an employee got paid at regular and frequent intervals for the work he performed. Id. at 145-47. The use of the word “earned” in the statute reflects that the work has been performed, and therefore prompt payment is due. Phrased differently, the word “earned” means that the employee’s entitlement to wages or salary payments derives from his performance of the work for which he was employed. This Court does not believe that the Legislature intended to include within the rubric of wages or salary “earned” those monies that are due to the employee because of contractual obligations entered into by the employer, regardless of whether the work was performed. See Huebsch v. Katahdin Industries, Inc., 13 Mass. L. Rptr. 180, 182 (July 2, 2001) (Kottmeyer, J.). Such obligations may be enforceable in contract actions, but fall outside the special protection granted by the Legislature under the Wage Act to wages paid for hours worked. See id. See also Prozinski v. Northeast Real Estate Services, LLC, 59 Mass.App.Ct. 599 (2003) (severance pay falls outside the scope of the Wage Act). Those special protections include not only treble damages and the payment of attorneys fees, but also the individual liability of the president and treasurer of the employer for the amounts due.
This interpretation is reinforced by the provision in the Wage Act that requires that “any employee discharged from such employment shall be paid in full on the day of his discharge . . .” G.L.c. 149, §148. Implicit in this provision is that all wages “earned” will have been “earned” at the time of discharge. If the Wage Act covered monies that become due to an employee following his discharge under the terms of an employment agreement, this provision would mean that the entirety of these monies would need to be paid at the time of discharge, even if the monies would not otherwise become due for six months. This Court does not believe that the Legislature intended to impose treble damages against employers who discharge an employee prior to the conclusion of his employment term, and then fail to pay the balance of his future salary on the date of his discharge. Rather, the treble damage penalty is reserved for those employers who fail to pay the employee for the work he performed before his discharge.
There is no dispute that the Kittredges had been paid, in accordance with the usual payroll practices of the Corporation, their fair share of the salaries they were entitled to for the work they performed on behalf of the Corporation prior to their termination. The $75,000 due to each under their respective Employment Agreement is not for work they performed. Rather, it is the balance of their salaries for the six month period following their termination until March 19, 2001, when the Corporation was permitted to terminate the Employment Agreement without penalty. The Kittredges may enforce their contractual right to these monies, but they have no right under the Wage Act to its payment. Since their complaint in this action against the individual principals of the Corporation rests solely on a Wage Act claim, the defendants’ motion to dismiss must be allowed for failure to state a claim.
ORDER
For the reasons stated above, this Court hereby ORDERS that:
1. The defendants’ motion to dismiss is ALLOWED.
2. A judgment shall enter forthwith in favor of the defendants, with statutory costs.