Electronic Data Systems Corporation *vs*. Attorney General & another.[1]

Suffolk. February 2, 2009. - June 11, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Attorney General. Contract,* Employment. *Labor,* Wages. *Employment,* Termination. *Damages,* Employment contract.

This court, deferring to the Attorney General's reasonable interpretation of the Wage Act, G. L. c. 149, § 148, concluded that the Wage Act requires that an employer pay an employee for unused vacation time remaining at the time of the employee's involuntary discharge, and that because the plaintiff employer's written vacation pay policy did not provide for such payment, the policy contravened the Wage Act. [65-71]

Civil action commenced in the Superior Court Department on January 2, 2007.

The case was heard by *Nancy Staffier Holtz*, J., on a motion for judgment on the pleadings.

The Supreme Judicial Court granted an application for direct appellate review.

*Robert P. Morris* for the plaintiff.

*Kevin Conroy*, Assistant Attorney General (*Marsha Hunter*, Assistant Attorney General, with him) for Attorney General.

The following submitted briefs for amici curiae:

*Ben Robbins, Martin J. Newhouse, & Jo Ann Shotwell Kaplan* for New England Legal Foundation & others.

*Sherley E. Cruz & Cynthia Mark* for Greater Boston Legal Services.

*Philip J. Gordon* for National Employment Lawyers Association, Massachusetts Chapter.

Botsford, J. In this case we return to the question whether the written vacation pay policy of the plaintiff, Electronic Data Systems Corporation (EDS), violates G. L. c. 149, § 148 (Wage Act or § 148), when applied to an employee who is involuntarily

---

[1] Division of Administrative Law Appeals (DALA).

terminated. See *Electronic Data Sys. Corp.* v. *Attorney Gen.*, 440 Mass. 1020 (2003) (*EDS I*). Giving deference to the Attorney General's reasonable interpretation of the Wage Act and in agreement with the Superior Court judge and the division of administrative law appeals (DALA), we conclude that the statute requires such an employee to be paid for unused vacation time remaining at the time of involuntary discharge; and that because the EDS policy does not provide for such payment, it contravenes the Wage Act. We therefore affirm the judgment of the Superior Court.[2]

*Background.* The facts are not contested. Francis Tessicini was an employee of EDS or one of its predecessor companies for twenty-one years, from 1984 to 2005. On April 8, 2005, EDS eliminated Tessicini's position.

EDS's written vacation pay policy (vacation pay policy, or policy), as updated on July 30, 2004, provides that beyond the first year of employment, the amount of an employee's paid vacation time is based on the number of full calendar years he or she has worked for EDS or one of its predecessor companies. Under the policy, a person who has been employed for twenty years or more is eligible for five weeks of paid vacation per calendar year, to be used by December 31 of that year or lost.[3]

---

[2]We acknowledge the amicus brief of New England Legal Foundation, Associated Industries of Massachusetts, and Retailers Association of Massachusetts in support of EDS; and the amicus briefs of Greater Boston Legal Services and the National Employment Lawyers Association, Massachusetts Chapter, in support of the Attorney General.

[3]In particular, the policy states:

"After your first calendar year of employment, you are eligible for vacation as follows:

| "If you have worked for EDS this number of full calendar years: | You can take this many days of vacation: |
| --- | --- |
| 1 year to 9 years | 3 weeks per calendar year |
| 10 years to 19 years | 4 weeks per calendar year |
| 20 years and beyond | 5 weeks per calendar year |

" . . .

"If you are a salaried employee, any unused vacation expires on December 31 and may not be carried forward, subject to state law exceptions."

The policy further provides that "vacation time is not earned and does not accrue. If you leave EDS, whether voluntarily or involuntarily, you will not be paid for unused vacation time (unless otherwise required by state law)."

At the time of his discharge on April 8, Tessicini had used only one day of vacation in calendar year 2005. Pursuant to its vacation pay policy, when EDS discharged Tessicini, it did not pay him for any part of his unused vacation time. On May 5, 2005, Tessicini filed a written complaint with the Attorney General's fair labor division, alleging that EDS owed him vacation payments under the Wage Act.[4] The Attorney General issued a citation that, as amended, required payment of $1,799.70 to Tessicini, and assessed a civil penalty of $3,490 for intentional failure to make timely payment of wages. EDS appealed from the citation to DALA, which issued a written decision affirming the citation, but calculating the payment owed to Tessicini as $1,970.95.[5] EDS then sought review of DALA's order in the Superior Court pursuant to G. L. c. 30A, § 14. Ruling on EDS's motion for judgment on the pleadings, a judge in the Superior Court denied the motion and affirmed DALA's decision. EDS appealed, and we granted its application for direct appellate review.

*Discussion.* Pursuant to G. L. c. 30A, § 14 (7) (*c*), EDS challenges DALA's decision affirming the Attorney General's citation, and the citation itself, as being based on an error of law. We review questions of law in administrative decisions de novo. *Belhumeur* v. *Labor Relations Comm'n*, 432 Mass. 458, 463 (2000), cert. denied, 532 U.S. 904 (2001).

The Wage Act provides in pertinent part:

"Every person having employees in his service shall

---

[4]The fair labor division was then known as the fair labor and business practices division.

[5]The payment to Tessicini was calculated by prorating his five weeks of vacation per year over the fourteen weeks he had worked, and subtracting the day of vacation he actually took, requiring EDS to pay his salary for 5.75 vacation days. EDS does not challenge the figure arrived at by DALA as to that payment. EDS does argue, in a short footnote and without citation, that there is no basis for the civil penalty assessed. The footnote does not rise to the level of appellate argument, and we deem the argument waived. See *Commonwealth* v. *Lydon*, 413 Mass. 309, 317-318 (1992), citing Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . . ; *and any employee discharged from such employment shall be paid in full on the day of his discharge . . . . The word 'wages' shall include any holiday or vacation payments due an employee under an oral or written agreement. . . .*

"*. . .*

"*No person shall by a special contract with an employee or by any other means exempt himself from this section . . .*" (emphasis added).

G. L. c. 149, § 148. The parties offer differing interpretations of these statutory provisions. EDS argues that because "vacation payments" under the Wage Act's partial definition of "wages" are only those "due" under the terms of an oral or written employment agreement, the agreement may restrict or limit an employee's right to those payments without violating the Act's "special contracts" clause. Applying that interpretation to this case, EDS claims that under the language of § 148, no payment is "due" Tessicini "under [the] written agreement," *id.,* where its policy explicitly provides that employees leaving EDS on a voluntary or involuntary basis will not be paid for unused vacation time. The Attorney General, in turn, argues that, once Tessicini had accumulated vacation time according to the vacation pay policy, it became "due" under the definition of "wages," and therefore constituted "wages earned," which § 148 mandates must be paid in full on the day of his discharge; the Attorney General considers the portion of EDS's vacation pay policy denying payment for unused vacation time to constitute an unenforceable "special contract" under the "special contracts" clause of the statute.

In *EDS I,* which concerned an earlier version of the EDS vacation pay policy that was worded slightly differently, the same parties offered the same interpretations of the Wage Act that they present here. *EDS I,* 440 Mass. at 1020-1021. At that time, EDS's policy stated, "If you *leave* the company, you do not receive vacation pay for unused vacation time" (emphasis added). *Id.* at 1020. Construing the policy against EDS as the drafter, we

concluded that the policy reasonably could be read to require forfeiture of unused vacation time only for employees who voluntarily left employment. *Id.* at 1021. Because the employee in *EDS I* was involuntarily terminated, we did not reach the interpretive question whether the Wage Act permits an employer not to pay an employee for unused vacation time when he or she is involuntarily terminated. *Id.* at 1021-1022. Following *EDS I*, EDS modified the wording of its policy to make clear that employees leaving involuntarily also forfeit unused vacation time. This case, arising under the modified policy, presents the question we earlier left open.

As EDS and the Attorney General recognize, the critical phrase in § 148 is the partial definition of "wages": "The word 'wages' shall include any holiday or vacation payments due an employee under an oral or written agreement." Given its express reference to what is "due" to the employee under an "agreement," we begin with a review of the vacation pay policy itself. As the Superior Court judge noted, there are contradictions in the policy. While the policy does state, in connection with its provision refusing payment for unused vacation time if an employee leaves or is terminated, that "vacation time is not earned," the structure of and other language in the policy indicate otherwise. The policy states that employees are eligible for "vacation *pay*" (emphasis added) based on the number of hours worked each week and, after the first year, ties the number of paid vacation weeks for which an employee is eligible to the number of years the employee "ha[s] worked" for EDS. The clear import of these provisions is that paid vacation at EDS is earned.

Against this background, we turn to the interpretive task at hand, namely, the meaning of § 148. We do not do so in a vacuum. In 1999, pursuant to the Attorney General's exclusive authority to enforce G. L. c. 149, the Attorney General issued Advisory 99/1, an advisory regarding the Wage Act's treatment of employers' vacation policies.[6] The advisory states:

"Employers who choose to provide paid vacation to

[6]The Attorney General's enforcement authority is granted by G. L. c. 23, § 3 (*b*), which reads in relevant part:

"Notwithstanding any general or special law to the contrary, the

their employees must treat those payments like any other wages under [the Wage Act]. . . . Like wages, the vacation time promised to an·employee is compensation for services which vests as the employee's services are rendered. Upon separation from employment, employees must be compensated by their employers for vacation time earned 'under an oral or written agreement.' "

*Id.* at 1. In a section titled "No Forfeiture of Earned Vacation Time," the advisory states:

"Since [the Wage Act] provides for the timely payment of all wages earned, an employer may not enter into an agreement with an employee under which the employee forfeits earned wages, including vacation payments. Examples of these agreements are vacation policies that condition the payment of vacation time on continuous employment or that require that employees provide notices to quit. Employees who have performed work and leave or are fired, whether for cause or not, are entitled to pay for all the time worked up to the termination of their employment, including any earned, unused vacation time payments."

*Id.* at 2. The advisory further provides that an employer may require employees to "use all of their accumulated vacation time by a certain period of time or lose all or part of it," but that:

"Under such policies, the employer must provide adequate prior notice of the policy to employees and must ensure that employees have a reasonable opportunity to use the accumulated vacation time within the time limits established by the employer. Otherwise, a cap on accrual or a 'use it or lose it' policy may result in an illegal forfeiture of earned wages."

*Id.* at 3. Finally, the advisory provides that, unless another

attorney general shall have exclusive authority to conduct field investigations, inspections, and civil and criminal prosecutions with respect to, and otherwise enforce, said chapters 149 and laws pertaining to wages, hours and working conditions . . . ."

When Advisory 99/1 was issued, substantially similar language was codified at G. L. c. 23, § 1 (*b*), as appearing in St. 1996, c. 151, § 112.

schedule is specified in the agreement, vacation time is earned according to the time period in which the employee actually works:

> "For example, if an employee is to receive twelve vacation days 'in a year,' and the employee voluntarily or involuntarily terminates his or her employment after ten months . . . the employee would be entitled to ten vacation days . . . ."

*Id.* at 3-4.

The duty of statutory interpretation is for the courts, to be sure, but "[i]nsofar as the Attorney General's office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions." *Smith* v. *Winter Place LLC*, 447 Mass. 363, 367-368 (2006) (discussing Attorney General advisory interpreting G. L. c. 149, § 148A). See *Felix A. Marino Co.* v. *Commissioner of Labor & Indus.*, 426 Mass. 458, 460 (1998) (deferring to commissioner in interpreting ambiguous term in G. L. c. 149, § 26).

The Wage Act does not require employers to provide their employees with paid vacation. As the advisory reflects, however, the Attorney General interprets the Wage Act to mean that when an employer does provide for paid vacation and an employee is entitled to paid vacation under the terms of an employment agreement, the entitlement is another form of compensation, and becomes "due" day by day as the employee performs his or her duties.[7] It can be lost by disuse, but if an employee is "discharged from . . . employment," the value of the vacation benefit earned up to that date and that would still be available if the employee remained at the job must be "paid in full on the day of his discharge." G. L. c. 149, § 148.

---

[7]The judge emphasized the fact that vacation time under EDS's policy is "based on the number of full calendar years [the employee has] worked for EDS," in holding that vacation time was "earned." Although that fact supports the conclusion that EDS views vacation time as compensation for work done, it is not necessary to the outcome. The key point, as the Attorney General's 1999 advisory states, is that "vacation time promised to an employee is compensation for services which vests as the employee's services are rendered." Advisory 99/1, at 1.

EDS argues that the Attorney General's interpretation of
§ 148 is unreasonable for several reasons. First, EDS asserts
that "the Wage Act is merely the method by which private
agreements regarding vacation policies may be enforced," and
therefore that the provision of the Wage Act dealing with vaca-
tion payments as "wages" comes into play only where an
employer violates its own policy. We do not agree. The Wage
Act is intended to protect employees and their right to wages.
See *Wiedmann* v. *The Bradford Group, Inc.*, 444 Mass. 698,
703 (2005); *Boston Police Patrolmen's Ass'n* v. *Boston*, 435
Mass. 718, 720 (2002) (clear purpose of Wage Act is to prevent
unreasonable detention of wages). See also *Cumpata* v. *Blue
Cross Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 168 (D.
Mass. 2000) (Wage Act "meant to protect employees from the
dictates and whims of shrewd employers"). As its "special con-
tracts" clause recognizes, the Wage Act would have little value if
employers could exempt themselves simply by drafting contracts
that placed compensation outside its bounds — as EDS attempted
to do, when it stated that "vacation time is not earned."

EDS also contends that the legislative history of the Wage Act
reveals a clear intent not to require vacation payments on termina-
tion unless the particular employment agreement so stipulates.
The language in the Wage Act partially defining "wages" and ad-
dressing vacation payments was added in 1966. St. 1966, c. 319.
EDS points out, correctly, that 1966 House Doc. No. 199, propos-
ing to add to § 148 the language, "[t]he term 'wages' shall include
any holiday or vacation payments due an employee," was initially
rejected, and then was accepted with the modifying language
"under an agreement oral or written" inserted. See 1966 House J.
1211-1212, 1441. Contrary to EDS, we derive no clear guidance
from this sparse historical record. The addition of the modifying
phrase may well have been considered necessary to clarify that
the "holiday or vacation payments" amendment to the Wage Act
did not create an independent statutory duty to provide paid
holiday or vacation time, or that an employer could provide for
paid holiday or vacation benefits to its employees in oral as well
as written employment agreements. Certainly, this legislative his-
tory in itself does not evince a clear intent to allow employers
free rein to deny or condition earned "vacation payments" in any

way they choose, so long as they include the language to do so in an employment agreement.

EDS further argues that the Attorney General's position is incompatible with the policy, included within the same advisory, that an employer may require employees to "use all of their accumulated vacation time by a certain period of time or lose all or part of it." Advisory 99/1, at 3. In EDS's view, this position shows that the Attorney General did not consider entitlement to paid vacation time to be the equivalent of earned wages, or else it could not be lost if unused. However, as quoted previously, the advisory permits loss of accrued vacation time only where the employee has a reasonable opportunity to use (and be paid for) that time. *Id.* The Attorney General has therefore adopted a consistent view that an employee earns, by his or her service, the right to take paid vacation; the employee may lose the right through voluntary nonuse, but if an employer interferes with the employee's ability to use it, for example by discharging the employee, the employer must pay the value of the earned vacation.

The Attorney General's interpretation is not the only meaning that could be attached to the phrase "vacation payments due . . . under an [employment] agreement" in § 148. For example, the term "vacation payments" could refer exclusively to payment for vacation already taken, and not include payment for unused vacation time at termination. However, the Attorney General's reading of § 148 is a reasonable one, at least as applied to an employee who, like Tessicini, has earned and is entitled to paid vacation time under the terms of his employment agreement and who is involuntarily "discharged." Accordingly, we defer to her interpretation. See *Smith* v. *Winter Place LLC*, 447 Mass. at 367-368; *Felix A. Marino Co.* v. *Commissioner of Labor & Indus.*, 426 Mass. at 461 (deferring to implementing agency's definition where statutory term was "ambiguous" and "fairly debatable"). We do not reach the question whether the Wage Act requires an employee who leaves a job voluntarily, with earned vacation time unused, to be paid for that earned and unused vacation time.

*Judgment affirmed.*