Gordon, Robert B., J.
Plaintiff, Tze-Kit Mui (“Plaintiff’ or “Mui”), has brought suit against his former employer, the Massachusetts Port Authority (“Defendant” or “Massport”). Mui claims that Massport violated the Massachusetts Wage Act (the “Wage Act” or the “statute”), G.L.c. 149, §148, by failing to compensate him for accrued but unused sick leave at the time of his retirement. Massport now moves to dismiss Plaintiffs Amended Complaint, arguing that paid sick leave does not constitute a compensable “wage” under the statute. The parties came before the Court in a hearing held on March 23, 2015. For the reasons set forth below, the Defendant’s motion is DENIED.
BACKGROUND
The following background facts are taken from allegations contained in Plaintiffs Amended Complaint and the exhibits attached thereto, which the Court accepts as true for the purposes of Defendant’s Rule 12(b)(6) motion. See Schaer v. Brandeis University, 432 Mass. 474, 477 (2000). The Court draws all reasonable inferences in favor of the non-moving Plaintiff, as it must in the precincts of Rule 12. See Okerman v. VA Software Corp., 69 Mass.App.Ct. 771, 774 (2007).
Plaintiff worked as a Massport electrician for roughly 24 years — from November 27, 1989 until December 1, 2013. Throughout Mui’s employment, Massport maintained a Sick Leave Policy (the “Policy”), pursuant to which eligible employees were compensated upon retirement for their accrued but unused sick time. Massport workers accrued sick leave benefits during each pay period according to a specific formula. Any sick leave accumulated prior to January 1, 2007 was categorized as “Sick Bank 1,” while any sick leave earned on and after that date was categorized as “Sick Bank 2.” Eligible Massport retirees received: (a) a payout equal to 100% of any unused sick time in their Sick Bank 1 account, computed using their rate of pay as of December 31, 2006, and (b) a payout equal to 20% of any unused sick time in their Sick Bank 2 account, computed using their rate of pay in effect on their retirement date.[1] The Policy further provided that no employee terminated for cause was eligible to receive compensation for sick time from either Bank. The parties do not dispute that this Policy bound Massport to compensate eligible retirees for their accrued but unused sick leave at the time Mui retired.
On November 15, 2013, Mui applied for retirement. Massport approved this application, and Mui’s retirement commenced on December 1, 2013. For reasons unrelated to the present action, Massport later attempted to convert Plaintiffs retirement to a termination for cause. However, after a full adjudicative hearing on the issue, an arbitrator determined on December 10, 2014 that Mui had effectively retired on December 1, 2013, and that Massport did not and could not terminate him for cause after the fact.
On the date of his retirement, Plaintiffs Sick Bank 1 account held 1,618 hours of accrued but unused sick leave, and his Sick Bank 2 account contained 614 hours of accrued but unused sick leave. Massport, however, withheld payment for these banked benefits, relying upon its contention that Mui’s separation from the agency was properly treated as a termination for cause. On October 17, 2014, Plaintiff filed a complaint in the Superior Court, alleging that Massport had not compensated him for his accrued but unused sick time and had thereby violated G.L.c. 149, §148. On December 17, 2014, one week after receiving the arbitral ruling that rejected its position that Mui’s retirement was a termination for cause, Massport remitted payment to Plaintiff for all of his accumulated sick hours on a lx basis. Mui maintains, however, that his accrued but unused sick leave amounted to earned “wages” under the Wage Act, thus entitling him to statutory treble damages as a matter of law. Massport disagrees, and has moved to dismiss the Plaintiffs Amended Complaint for failure to state a claim.
DISCUSSION
I. Standard of Review
To withstand Defendant’s Motion to Dismiss, Plaintiffs Amended Complaint must allege facts “plausibly suggesting (not merely consistent with) an entitlement to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (internal quotations omitted). Rule 12 envisions a relatively low standard for survival of a motion to dismiss, see Marran v. Kobrick Offshore *568 Fund, Ltd., 442 Mass. 43, 45 (2004); and a complaint will not be dismissed merely because it puts forth a new theory of liability. See Pontremoli v. Spaulding Rehabilitation Hosp., 51 Mass.App.Ct. 622, 624 (2001). Although Plaintiffs Amended Complaint con-cededly posits a theory of Wage Act liability that has not yet been embraced in the holding of any Massachusetts appellate court, the undersigned has concluded that it states a viable claim as a matter of law and should be adjudicated on its merits.
II. Analysis
Originally enacted in 1879, the Massachusetts Wage Act “is intended to protect employees and their right to wages” by imposing specific payment requirements on employers in the Commonwealth. Electronic Data Sys. Corp. v. Attorney Gen., 454 Mass. 63, 70 (2009). The provision of the statute at issue in the present case (“§148”) thus provides as follows:
[A]ny employee discharged from . . . employment shall be paid in full on the day of his discharge . . . the wages or salary earned by him . . . The word “wages” shall include any holiday or vacation payments due an employee under an oral or written agreement . . . This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions . . . has been definitely determined and has become due and payable to such employee!.]
G.L.c. 149, §148.
Aggrieved employees may sue their current or former employers for violations of §148 after giving required notice to the Attorney General. See G.L.c. 149, § 150. Violations of the Wage Act may result in injunc-tive relief [e.g., payment of the due wages), costs and attorneys fees, and/or criminal penalties. Id. More critically, as of 2008, a plaintiff who has proven the wrongful withholding of wages is entitled to the mandatory assessment of treble damages. See St. 2008, c. 80, §5. “[T]he Wage Act imposes strict liability on employers,” and employers must “suffer the consequences of violating the statute regardless of intent.” Dixon v. Malden, 464 Mass. 446, 452 (2013) (internal citation and quotations omitted).
At its core, the Wage Act provides that an employer must pay all earned and owing wages to an employee upon the termination of his employment. Although the statute does not define “wages” beyond “salary,” it does make explicit reference to holiday and vacation pay, where guaranteed by agreement, and to commissions that have been “definitely determined.” By contrast, §148 makes no express mention of sick leave in any context, and Massport thus argues that the Legislature could not have intended the payment provisions of the Wage Act to cover it.
Although this argument is by no means without force, the lack of an explicit reference to sick leave benefits in the text of §148 cannot end the Court’s inquiry. Numerous Massachusetts courts have recognized claims to “wages” under the statute beyond those premised on salary, holiday, vacation or commission pay. See, e.g., Plourde v. Police Dep’t of Lawrence, 85 Mass.App.Ct. 178 (2014) (paid leave earned by working overtime hours, denominated “compensatory time” by employer, held to constitute wages under the Wage Act); Allen v. Intralearn Software Corp., 2006 Mass.App.Div. 71 (2006) (deferred compensation, earned pursuant to employment contract, held to constitute wages under the Wage Act); Pacheco v. H.N. Gorin, Inc., 28 Mass. L. Rptr. 311 (Mass.Super. 2011) (Leibensperger, J.) (monies deducted from weekly paycheck and diverted to employer-coordinated retirement account constitute wages under the Wage Act); Black v. Cranwell Mgt. Co., 2009 LEXIS 431 (Mass.Super. 2009) (Ford, J.) (tips paid by patrons for spa service personnel qualify as wages under the Wage Act); Brown v. Nortel Networks, Inc., 14 Mass. L. Rptr. 544 (Mass.Super. 2002) (Chernoff, J.) (employer’s withholding of promised stock options potentially violated Wage Act); Stanton v. Lighthouse Fin. Servs., 621 F.Sup.2d 5 (D.Mass. 2009) (Gertner, J.) (deferred compensation reflecting employee’s base salary qualified as wages under the Wage Act).
At the same time, however, the Court acknowledges that not all forms of employer-provided compensation and benefits constitute “wages” under Chapter 149. For example, bonuses awarded within an employer’s discretion are typically not treated as wages to which employees are entitled upon termination. See, e.g., Weems v. Citigroup, Inc., 453 Mass. 147, 153-54 (2009); McQueen v. True Partners Consulting, LLC, 28 Mass. L. Rptr. 411, 2011 LEXIS 108, at *7-8 (Mass.Super. 2011) (Troy, J.) (as “consistently held” by Massachusetts courts, bonus payments are not wages under the Wage Act). Likewise, denial of due severance pay, while perhaps constituting breach of an employment contract, is generally not considered a violation of §148. See, e.g., Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass.App.Ct. 599, 603-04 (2003); Platt v. Traber, 85 Mass.App.Ct. 1114, 2014 LEXIS 513, at *3-4 (2014) (noting that recent cases reinforce conclusion that “severance payments are not covered by the wage act”).
Massachusetts Wage Act jurisprudence has to date yielded no direct guidance as to whether or not the statute covers compensation for accrued but unused sick leave. Although some courts have adverted to sick time in dicta when discussing §148, the Court is unaware of any that have actually decided the specific issue of whether or not — and under what circumstances — accrued but unused sick leave constitutes “wages” under the Wage Act. For example, various decisions applying §148 have expressly likened sick leave to vacation and holiday pay, treating all three as “wage equivalents” but without conducting further analysis. See, e.g., Dennis v. Jager, Smith & Stetler, P.C., 11 Mass. L. Rptr. 567, 2000 LEXIS 114, at *2 *569 (Mass.Super. 2000) (Ball, J.) (“wages . . . include assured compensation and compensation equivalents such as accrued vacation pay and sick leave”); Scall v. Citizens Fin. Group, Inc., 2006 LEXIS 7717, at *38 (D.Mass. 2006) (Woodlock, J.) (“[T]he Wage Act only ensures the payment of ordinary wages arid wage equivalents, like specifically accrued vacation pay and sick leave . . .”).
Still other cases have suggested that unused sick time may constitute compensable wages due upon termination of employment only if so provided for in an explicit agreement. See, e.g., Schiavone v. Lawrence, 2013 WL 9925566, at *2 (Mass.Super. 2013) (Feeley, J.) (“Although it may not be entirely clear, it appears that courts find sick and personal time to be within the scope of the Wage Act only when based upon an express agreement by the employer”); Souto v. Sovereign Realty Assocs., 23 Mass. L. Rptr. 386, 2007 LEXIS 550, at *10 (Mass.Super. 2007) (Fremont-Smith, J.) (stating that plaintiff “is not entitled to recover compensation for personal and sick time under this statute [§148] absent express agreement”); Dickens-Berry v. Greenery Rehabilitation & Skilled Nursing Ctr., 1993 LEXIS 57, at *8 n.4 (Mass.Super. 1993) (Botsford, J.) (“Sick leave is not considered to be ‘wages’ to which an employee is entitled upon termination absent an express agreement by the employer”). See also Roche v. Morgan Collection, Inc., 882 F.Sup.2d 247, 256 (D.Mass. 2012) (Neiman, USMJ) (after recognizing that “there is some ambiguity in the relevant case law as to whether compensation for unused personal and sick time is recoverable under the Wage Act absent express agreement,” the Court concluded that because plaintiff had alleged that her employment agreement specifically contemplated payout of unused sick leave at the time of termination, her sick leave benefits were “more akin to assured non-discretionaiy compensation which may properly be considered a wage under the Act”). But see LeMaitre v. Massachusetts Turnpike Auth., 2006 WL 4927101, at *4 (Mass.Super. 2005) (Carhart, J.) (holding that, where unused sick days were agreed to constitute a form of deferred compensation, they did not constitute wages under the Wage Act).
The dicta contained in the foregoing authorities acknowledged, the parties have not presented — and the Court is not aware of — any controlling Massachusetts precedent addressing whether or not accrued but unused sick time qualifies as a “wage” under the Wage Act.[2] Because the language of the statute is silent on the term’s meaning, the Court must look elsewhere to divine the legislative intent behind §148. It is, of course, well-settled that “the intent of the Legislature [is] ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied, and the main object to be accomplished” by the law. Superintendent-Director of Assabet Valley Regional Vocational Sch. Dist. v. Speicher, 469 Mass. 633, 637 (2014) (citations omitted).
While the Legislature’s purpose in adopting the Wage Act is not made explicit in its text, the SJC has stated that the statute “was enacted primarily to prevent unreasonable detention of wages,” further noting that such an evil could have “consequent adverse effect on [the] family and community” of workers whose wages are withheld. See American Mut. Liab. Ins. Co. v. Commissioner of Labor & Indus., 340 Mass. 144, 147 (1959). See also Electronic Data Sys. Corp. v. Attorney Gen., 454 Mass. 63, 70 (2009) (“The Wage Act is intended to protect employees and their right to wages”). Section 148 thus plainly provides that “[ejvery person having employees in his service shall pay . . . each such employee the wages earned by him.” G.L.c. 149, §148. The 2008 amendment mandating treble damages for all violations of the Wage Act, irrespective of the employer’s intent or good faith, further reflects that the Legislature considers an employer’s withholding of earned compensation to be a substantial and deterrence-worthy offense. The question for the Court at this time, however, remains what exactly the Legislature intended to protect as “wages” under the statute, and whether or not such wages include Mui’s accrued but unused sick leave.
After a review of the relevant case authorities and the declared legislative intent behind the Wage Act, the Court discerns five specific principles that inform when employer-provided compensation or benefits may be considered “wages” under the statute. Where the compensation or benefit is (1) related to an employee’s work, (2) “earned” through the performance of such work, (3) free of any materially unsatisfied contingencies, (4) non-discretionary in nature, and (5) subject to an express obligation to pay upon termination of employment — unless the statute otherwise provides — it constitutes a “wage” that will be subject to the protections of the Wage Act. Applying this five-factor test to Plaintiffs Amended Complaint, the Court finds that Mui has stated a legally cognizable claim for unpaid wages under G.L.c. 149, §148.
Regarding the first principle, the very essence of wages is compensation for an employee’s work. Employment benefits beyond base salary may constitute wages where their provision tracks the performance of work, as they typically do with vacation pay. When an employer provides paid vacation time that accrues on a daily, weekly, or other incremental basis, those vacation hours become due “as the employee performs his or her duties.” Electronic Data Sys. Corp., 454 Mass. at 69. As such, “like wages, the vacation time promised to an employee is compensation for services which vests as the employee’s services are rendered.” Id. at 68 (emphasis added). In the case at bar, Plaintiffs sick leave benefits similarly tracked the hours of service he provided in Massport’s employ, *570 accruing as he performed his daily duties for the agency. For this reason, his sick leave aligns in concept with the type of vacation pay contemplated by the Wage Act, see, e.g., Dennis v. Jager, Smith, supra (equating vacation and sick leave as “wage equivalents”), and in this respect satisfies the first principle of a compensable wage under §148.[3]
Second, the statute explicitly requires that any compensation claimed by an employee pursuant to the Wage Act must be “earned.” Massachusetts courts have placed particular emphasis on the notion of a benefit being earned to qualify as a wage under §148. The Appeals Court has stated that the “plain and ordinary meaning” of the word “earned” for this purpose is “acquire(d) by labor, service, or performance where an employee has completed what is required of him." Plourde, 85 Mass.App.Ct. at 182, quoting Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 492 (2011). The term has likewise been construed to mean that “the employee’s entitlement to wages . . . derive[d] from his performance of the work for which he was employed.” Kittredge v. McNerney, 17 Mass. L. Rptr. 652, 2004 LEXIS 185, at *7 (Mass.Super. 2004) (Gants, J.). See also Fitzgerald v. Chipwrights Design, Inc., 19 Mass. L. Rptr. 558, 2005 LEXIS 329, at *8 (Mass.Super. 2005) (Kern, J.) (“The use of the word ‘earned’ in the (Wage Act] reflects that the work has been performed . . .”).
The Court here adopts the foregoing principles in its own construction of the word “earned” as used in § 148. The Legislature’s requirement that wages under the statute be “earned” must mean that only benefits paid in consideration of work contemporaneously performed aré protected by the Wage Act. An employee’s base salary or hourly rate of pay, for example, is “earned” when a worker performs under his or her employment agreement. See Sword v. Biofertec, Ltd., 15 Mass. L. Rptr. 489, 2002 LEXIS 494, at *9 (Mass.Super. 2002) (Muse, J.) (holding that “the base salary of an individual falls within the Act’s definition of wages”). By contrast, monies owed to a former employee under a settlement agreement, where payment is contingent on performing obligations pursuant to such agreement, are not “earned” through employment, and thus cannot be recovered as wages under the Wage Act. See Jason v. Lowell, 2012 Mass.App.Div. 185, 2012 LEXIS 62, at *4-5 (2012). Likewise, benefits that continue beyond the actual term of employment, even though contemplated by an employment agreement, cannot constitute compensation for work performed and are thus not wages protected by the statute. See Kittredge, 2004 LEXIS at *9. Similarly, the payment of post-employment severance benefits, even when due under the terms of an employment agreement, falls outside the purview of the Wage Act. See Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass.App.Ct. 599, 603-04 (2003). While entitlement to these kinds of benefits may be enforced in common law contract actions, they are not “earned” through an employee’s performance of work and are thus beyond the reach of the statute. See, e.g., Huebsch v. Katahdin Indus., 13 Mass. L. Rptr. 180, 2001 LEXIS 209, at *10-11 (Mass.Super. 2001) (Kottmeyer, J.) (holding that where employee was promised a second-year salary, but failed to work a second year, he did not “earn” the monies; thus, while a claim existed under the contract, no relief under the Wage Act availed).
Here, the Court concludes that Plaintiff did, in fact, earn his sick leave benefits through work. Mui accumulated sick time throughout his term of employment with Massport, hours accruing in his Sick Bank accounts in proportion to the number of hours he worked. Most importantly, Massport committed to buy back these hours with compensation if Mui chose to work rather than collect the sick leave benefits available to him. In this sense, therefore, Massport committed to pay Plaintiff for work he performed, as his accrual of unused leave hours signified that Mui had opted to work in circumstances where he might warrantably not have. By committing to compensate Plaintiff for whatever sick leave benefits he did not exhaust while employed, Massport incenüvized Mui to draw down on such benefits only when he truly needed them.[4]
By contrast, an employee who receives pay only when he stays home with an illness is, in effect, compensated for being ill. The employer is acting as a kind of insurer, providing its employee with the safety net of continued compensation (up to a limit) when he is unable to report for duty. An employee who receives sick leave benefits in these circumstances has not “earned” them for his work. Indeed, he is being paid despité the fact that he is not working.[5] The same can be said of a worker whose termination triggers his right to severance benefits. As with conventional sick leave, the discharged employee has a contractual right to receive the promised severance benefits; but it strains the language to suggest that he has “earned” such benefits through his work. Rather, in both cases, the entitlement to benefits is activated by the cessation of otherwise compensable work.
Ultimately, an employer who commits to pay accrued but unused sick leave benefits has, in every real sense, agreed to pay employees special compensation for work they perform under difficult circumstances. Enforcing such commitments would appear to fulfill the core aspiration of the Wage Act — to ensure that employers pay out the wages their employees earn on the job. See Boston Police Patrolmen’s Assoc., Inc. v. Boston, 435 Mass. 718, 720 (2002) (‘The purpose of the [Wage Act] is clear: to prevent the unreasonable detention of wages”).
Third, and relatedly, cases under the Wage Act teach that an earned wage can have no material contingencies that remain unfulfilled. Where conditions are attached to the receipt of a benefit, an *571 employee has not yet “earned” it until such conditions are satisfied. See, e.g., Fitzgerald, supra, 2005 LEXIS 3 at *9 (“the compensation due under plaintiffs employment agreement does not fall within the scope of the Wage Act because it is compensation triggered by a contingency, rather than wages to be paid for hours worked . . .”). A bonus that is not payable until an employee has served for a specific length of time represents an example of such contingent compensation, see Weems v. Citigroup, Inc., 453 Mass. 147, 154 (2009), as is a commission not due until an actual sale is consummated, see Lohnes v. Darwin Partners, Inc., 15 Mass. L. Rptr. 157, 2002 LEXIS 318, at *8 (Mass.Super. 2002) (Gants, J.), and as is compensation promised under an employment agreement only if the employer receives grant funding, see Gabovitch v. First Signs, Inc., 71 Mass.App.Ct. 1124, 2008 LEXIS 440, at *8-9 (2008). See generally Boston Police Patrolmen’s Ass’n v. Boston, 11 Mass. L. Rptr. 11, 1999 LEXIS 434, at *16 (1999) (Garsh, J.), quoting Campbell v. Boston, 290 Mass. 427, 430 (1935) (“Wages . . . are money to which the employee has an absolute and vested right; it is his property not subject to any limitation, contingency or delay”).
In the case at bar, the Amended Complaint makes clear that Plaintiff satisfied all applicable contingencies on his right to unused sick leave buy-back. Mui worked at Massport for over 24 years. He had accrued and not used substantial sick leave benefits as of his retirement date. And he was adjudged not to have been discharged for cause by an arbitrator with jurisdiction. Under Massport’s Policy, therefore, Plaintiff had fulfilled all conditions that would otherwise stand in the way of his entitlement to redemption of his sick leave. Massport effectively conceded as much when it paid out his accrued benefits following receipt of the arbitrator’s decision.
Massport nonetheless maintains that, because certain contingencies could theoretically have deprived Plaintiff of his right to compensation under its Sick Leave Policy, the existence of such contingencies remove Mui’s benefits from the category of earned wages. The Court does not agree. It is, of course, settled that wage compensation cannot be deemed to have been “earned” if it is subject to outstanding contingencies. See Dennis v. Jager, Smith & Stetler, P.C., 11 Mass. L. Rptr. 567, 2000 LEXIS 114, at *3 (Mass.Super. 2000) (Ball, J.) (“Courts have distinguished wages . . . from compensation triggered by contingencies and thus outside the scope of the Wage Act”). That being said, contingencies are of no consequence once their terms are fulfilled, as Plaintiffs clearly were in this case.[6] The fact that payment of Mui’s compensation was subject to certain pre-conditions does not mean that his sick leave benefits cannot be considered earned wages. To the contrary, Plaintiffs satisfaction of the Massport Policy’s conditions for buy-back is what caused his accrued, unused sick leave benefits to ripen into an earned entitlement.[7]
The fourth principle that drives when a benefit may or may not be considered a wage under §148 of the Wage Act is straightforward: payment of the benefit cannot be within the employer’s sole discretion. The SJC has made clear that where an employer is under no obligation to provide given benefits, and the decision to do so is entirely discretionaiy (as -with typical bonus programs), the benefits are not “wages” under the statute. See Weems v. Citigroup, Inc., 453 Mass. 147, 153-54(2009) (indicating that the “operative fact” in determining that bonuses are not “wages” under the Wage Act is their discretionaiy nature, “because the employers are. . . . under no obligation to award them”). See also McQueen v. True Partners Consulting, LLC, 28 Mass. L. Rptr. 411, 2011 LEXIS 108, at *8 (Mass.Super. 2011) (Troy, J.) (‘The Supreme Judicial Court [has] definitively held discretionaiy bonuses to be outside the scope of ’wages’ [under §148]”). Here, Massport offered its employees the opportunity to earn paid sick leave according to specific rules, and bound itself to the payment of accrued but unused sick time to retirees who followed those rules. Mui met all of Massport’s criteria for an accrued sick time buy-back upon retirement. Massport’s payment obligation, per the language of its own Policy, was not discretionaiy in such circumstances. The agency’s payout of Mui’s accrued Sick Bank benefits (albeit at the lx rate) in December 2014 reinforces this fact — further militating toward the conclusion that Plaintiffs entitlement is in the nature of an earned wage. See Roche v. Morgan Collection, Inc., supra, at 257 (non-discretionaiy compensation may properly be considered a wage under the Wage Act).
Finally, the essential promise of the Wage Act is that an employer will pay an employee what it has promised to pay for the work the employee performed. In this regard, the statute protects as wages those benefits that employers obligate themselves to disburse to their employees beyond base salaries, such as contracted-for holiday and vacation time and definitely determined commissions. SeeG.L.c. 149, §148. Thus, when interpreting §148, courts have looked to whether or not an employer has contractually bound itself to provide a certain benefit before such benefit will be considered a compensable wage.
The SJC confirmed this principle clearly when addressing the matter of vacation pay in Electronic Data Sys. Corp.:
The Wage Act does not require employers to provide their employees with paid vacation. [However], when an employer does provide for paid vacation and an employee is entitled to paid vacation under the terms of an employment agreement, the entitlement is another form of compensation ... It can be lost by disuse, but if an employee is discharged from employment, the value of the vacation benefit earned up to that date and that would still be *572 available if the employee remained at the job must be paid in full[.)
Electronic Data Sys. Corp. v. Attorney Gen., 454 Mass. 63, 69 (2009) (emphasis added). The Court concludes that this reasoning applies in full measure when an employer has expressly obligated itself to pay eligible retirees for their accrued but unused sick time. In the case at bar, Massport contractually bound itself through its Sick Leave Policy to redeem Mui’s accrued but unused sick leave. Construing this employer’s contractual commitment to pay an employee for a non-discretionary benefit that the employee earned through work as creating a “wage” relationship fulfills the primary purpose of the Wage Act.[8]
In accordance with the foregoing discussion, it is the Court’s conclusion that an employee who fulfills the conditions for a payout of accrued but unused sick leave benefits under an employer’s policy has established a wage right that is enforceable under the Massachusetts Wage Act.[9] Here, Massport violated its contractual commitment to pay Plaintiff for accrued but unused sick leave benefits.[10] Mui earned and accrued these benefits by virtue of working for Massport rather than drawing down on accumulated sick time. And at the time of his retirement, Mui’s contractual entitlement to a payout of these benefits was neither contingent on an unfulfilled condition, nor in any sense discretionary to Massport. Having thus passed all five parts of the multi-factor test outlined above, the Court concludes that treating Plaintiffs benefits as earned wages under the Wage Act is fully in accordance with prevailing interpretations of the statute.
CONCLUSION AND ORDER
For the reasons set forth herein, the Defendant’s Motion to Dismiss is DENIED.

 Though not denominated as such by the parties, the Court conceptualizes Massport’s Sick Leave Policy as a type of “buy-back” program, Massport having agreed to buy back (at particular levels of valuation and provided certain conditions are met) any accrued, unused sick time banked by an employee at the time of her or his retirement.

 The Court observes in this connection that the question has assumed much greater prominence since 2008, when the Legislature mandated the assessment of treble damages against any employer found to have violated G.L.c. 149, §148. (Indeed, it is fair to say that, Massport having paid out all of Mui’s Sick Bank benefits, this entire lawsuit reduces to Plaintiffs pursuit of treble damages.) Prior to 2008, employers defended Wage Act claims principally on the ground that the species of compensation or benefit allegedly owed was not, in fact, contractually due. If the compensation claimed was not owed under the given employment agreement, the Wage Act claim failed. If it was owed, by contrast, the Wage Act claim succeeded with a lx remedy that was coextensive with the damages recoverable at common law for breach of contract. Courts were simply not called upon to address the particular factual circumstance presented in this case — where an employer acknowledges that the compensation is due under its contract, but contests that it constitutes a “wage” under §148 — because the single-damages remedy that availed at that time rendered such a position immaterial. It is thus no suiprise to the undersigned that so many justices of this Court have suggested (see ante) that a contractual agreement to pay out accrued but unused sick leave would be enforceable under the Wage Act. With liability analysis under the employment contract and under the statute merging in a singular inquiry, courts had no reason to question the premise that an employer that failed to pay contractually due amounts under a contract had necessarily violated the Wage Act. The case at bar challenges this premise, and prompts the Court to state that the dicta referenced in the foregoing cases is of limited value in interpreting the statute.

 At the motion hearing, counsel for Defendant forthrightly acknowledged that an employer’s refusal to pay an employee contractually due sick benefits during the pendency of his employment (such as by docking his paycheck during periods of illness rather than providing full compensation as promised) would violate the Wage Act. The Court sees little in principle to distinguish Massport’s Sick Leave Policy from this obligation, other than the non-material fact that payment of the benefit occurs at the conclusion of rather than during the employee’s employment.

 This is not to say that employees who utilize paid sick leave are somehow malingering. It is to say that illnesses fall on a spectrum — from those which are merely discomforting to those that are completely disabling. An employer that redeems accrued but unused sick leave with cash gives reasonable recognition to this fact — incentivizing employees to take sick leave only when they cannot do their jobs safely and satisfactorily, and rewarding them with premium pay when they work in circumstances when they might have chosen to receive regular pay by staying home.

 The scenario thus described constitutes what the Court regards as “conventional” sick leave, i.e., where an employer offers an opportunity to earn sick leave benefits which can be drawn down so that an employee continues receiving a paycheck while absent due to illness. In the case of conventional sick benefits, no agreement exists guaranteeing employees a payout of accrued but unused leave hours upon termination.

 Employers offering commissions, for example, are granted leeway to negotiate employment agreements that delineate the circumstances under which commissions become “due and payable” and, thus, earned wages for purposes of§148. See Lohnes v. Darwin Partners, Inc., 15 Mass. L. Rptr. 157, 2002 LEXIS 318, at *8 (2002) (Gants, J.) (“If commissions were not protected by G.L.c. 149, §148 because they became payable only when something happened, then the Legislature would be engaged in a sham to have amended the statute to include commissions, because all (or virtually all) commissions would fall outside the protection of the statute. The Legislature intended no sham; it required simply that the commissions be ’definitely determined,’ meaning that the contingency must already have occurred and the amount due be capable of being precisely ascertained”).

 Massport makes much of the fact that its sick leave buy-back policy includes provisions pursuant to which workers could forfeit their eligibility to receive a payout, such as where the employee is terminated for cause. Such forfeiture, the argument goes, proves that the sick leave benefits are not wages, because the SJC has made clear that employees may not be deprived of wages based on the circumstances of their termination. See Electronic Data Sys. Corp. v. Attorney Gen., 454 Mass. 63, 63 (2009) (policy requiring forfeiture of accrued, unused vacation pay where employee is involuntarily discharged violates Wage Act). This argument suffers from a certain circularity. While the existence of a forfeiture feature might suggest an intent on the part of Massport to avoid coverage under the Wage Act, the policy provision may simply be unlawful. This, of course, was the case in Electronic Data Sys. Corp., where the employer’s forfeiture provision was invalidated as contrary to the dictates of the Wage Act. See id.
*573 Massport’s argument fails for a more fundamental reason, however, one that the Court believes may allow a forfeiture-for-cause discharge provision to survive Wage Act scrutiny even as accrued sick leave benefits are treated as compensa-ble wages. It is certainly true that wages, once fully earned, may not be taken from an employee solely based on the circumstances of his termination. See Electronic Data Sys. Corp., supra. Here, however, the Court does not hold that accrued but unused sick leave benefits are, by their nature, earned wages that must be paid out upon termination in all circumstances. Unlike vacation benefits (which by statute constitute wages at the time of accrual), Massport’s sick leave benefits ripen into compensable wages upon an eligible employee’s retirement and only by reason of the agency’s express commitment to buy them back at that time. For this critical reason, and recognizing that the essential aspiration of the Wage Act is to hold employers to their promises insofar as concerns employee compensation, Massport’s conditions (le., no payment upon discharge for cause) and limitations (Le., only fractional redemption of benefits accrued after December 31, 2006) on sick leave payout do not offend the statute.

 Although not presented for decision in this case, the Court wishes to make clear that, in accordance with the foregoing analysis, conventional sick leave benefits not accompanied by an employer’s express commitment to provide an economic payout for the same on retirement would not trigger rights under the Wage Act.

 The Court’s decision in this regard is not unlike the result reached by courts in other states that have addressed the issue under wage protection statutes that likewise do not explicitly include sick leave benefits as “wages.” See, e.g., Chipman v. Northwest Healthcare Corp., 317 P.3d 182, 188-89 (Mont. 2014); Dunn v. Reynolds Sch Dist. No. 7, 2010 LEXIS 121401, at *43-45 (D.Or. 2010) (Hubel, Mag.); Naches Valley Sch. Dist. No. JT3 v. Cruzen, 775 P.2d 960, 966 (Wash.Ct.App. 1989); Schwartz v. Gary Community Sch. Corp., 762 N.E.2d 192, 197-99 (Ind.Ct.App. 2002); Sosnowy v. A. Perry Farms, Inc., 764 F. Sup.2d 457, 475-77 (E.D.N.Y. 2011).

 That Massport was at the time maintaining that Mui’s separation from employment was a termination for cause is of no moment in light of the arbitrator’s unappealed determination that cognizable cause for discharge was in fact lacking. An employer that chooses to withhold an employee’s wages under a perceived claim of right had best be right, given the mandatory imposition of treble damages that results if it is not.